(831 P.2d 568)

No. 65,841

DALE MENDENHALL, *Appellee*, v. GARY ROBERTS, *Appellant*.

Opinion filed May 1, 1992.

*Donald L. Martin*, of Shepherd, Harding, Martin & Schmeidler, of Ellis, for the appellant.

*Thomas C. Boone*, of Law Offices of Thomas C. Boone, of Hays, for the appellee.

Before RULON, P.J., LARSON and LEWIS, JJ.

LEWIS, J.: This is an appeal on issues arising from the attempted termination of an oral farm lease pursuant to K.S.A. 58-2506(c). The trial court held that the notice given was in compliance with the law and terminated the lease. The appellant appeals from that decision and from the trial court's orders on other issues.

For the purposes of clarity, the appellant, Gary Roberts, will be referred to as "T" for tenant. The appellee, Dale Mendenhall, was the landlord and will be referred to as "LL."

Sometime in 1988, the parties entered into an oral lease involving 560 acres of farm ground in Lane County. Insofar as the validity of the notice of termination is concerned, all the rented ground may be considered crop ground. LL was the uncle of T and the owner of the real estate. Under the lease, the crops were to be shared one-third to LL and two-thirds to T.

On August 30, 1988, LL sent a handwritten note to T, terminating the oral lease. T received this notice on September 2, 1988. The notice read as follows:

"Gary,
"This is to let you see that the lease on the farm ground on [Southeast Quarter (SE/4), the Northeast Quarter (NE/4), Southwest Quarter (SW/4) and the South Half of the Northwest Quarter (S/2-NW/4) of 3-16-27] of Lane County will run out August 1, 1989.
"Sorry that you did not farm it so you could have keep [sic] it.
"Sincerely,
"Dale Mendenhall"

At the time the notice was received, there were no growing crops on the land. The 1988 wheat crop had been recently harvested. The summer fallow ground had been worked and prepared for the seeding of the 1989 wheat crop. That crop was ultimately sown and harvested by T. There is no issue as to the 1989 crop. All parties agree that T had the right to harvest it, and it was divided pursuant to the crop-sharing agreement between the parties.

The crop in issue is the 1990 crop. T chose to ignore the notice he received on September 2, 1988, and planted all of the farm ground back to wheat in the fall of 1989. In doing so, T not only planted the summer fallow acres but continuously cropped the balance of the farm acres into wheat. At some point after the 1990 crop was planted, LL destroyed 100.7 acres of the wheat.

T took the position, and maintains that position on appeal, that the notice to terminate his lease was ineffective. He argues that, under K.S.A. 58-2506(c), a notice is required to fix the termination of an oral farm lease as March 1. T argues that the failure of the notice in this case to fix the termination date of the tenancy

as March 1 rendered it a nullity. As a result, T argues that the lease was never terminated.

T also contends that he entered into a new oral lease with LL sometime after the 1989 harvest. The new agreement, T contends, permitted him to plant 100.7 acres of LL's ground to wheat and to harvest those acres in 1990.

The dispute between the parties over the possession of the ground led to the filing of this action by LL. LL's petition alleged that the lease was terminated August 1, 1989, and sought to eject T from the real estate and to recover $1,656 in damages.

T responded to the petition by filing a motion to dismiss for failure to state a claim. This motion was based on T's argument that the notice to terminate was ineffective on its face and was insufficient to show that LL had terminated the tenancy.

After a hearing, the trial court ruled that the 1988 lease had been properly terminated by the notice on August 1, 1989.

In due time, T filed an answer to the petition and several counterclaims against LL. In his answer, T continued to claim that the notice given was ineffective to terminate the oral lease. The answer also alleged a new lease between the parties in 1989, giving T the right to plant 100.7 acres of wheat for harvest in 1990. The answer set up counterclaims for breach of a pasture lease, unjust enrichment, damages for destroying wheat, and other matters.

After the issues were finally identified, the case was set for jury trial. The trial court reiterated that it had already ruled on the termination of the 1988 lease and that this ruling was not subject to further debate. The case went to trial principally on the claim of T that a new oral lease was entered into between the parties in 1989.

The case was never submitted to the jury. Prior to T's resting his case but after he had testified, the trial court took the case from the jury and entered judgment in favor of LL. The court ruled that T was attempting to rely entirely on his 1988 lease, which the court determined had already been terminated. The court held that T had offered insufficient evidence to show that a new lease between the parties had been entered into in 1989. No damages were awarded to either party.

T appeals from these rulings.

## WAS THE NOTICE EFFECTIVE
## TO TERMINATE THE 1988 LEASE?

This case involves one issue of significant importance. That issue is whether the notice given was sufficient to terminate the farm tenancy. The answer to this question requires us to interpret and give meaning to K.S.A. 58-2506. While this may seem a simple task, it is far from that. Quite frankly, the efforts of the legislature to draft an equitable standard for the termination of farm tenancies in this state presents a confusing history. Over the years, judicial decisions perceived to be unfair to tenants have prompted legislation designed to blunt further application of those decisions. As a result, we now have a statute that requires the notice to fix the termination date as March 1 but construes that notice, under some circumstances, to terminate the tenancy on an entirely different date.

The factual situation presented in this case is the ultimate nightmare for those who draft statutes and those who must interpret them. The notice in this case does not fix the termination of the lease on the date mandated by statute. Instead, it fixes the termination date on the date the statute says shall be the *construed* date of termination. We search for a logical result to a rather illogical problem. We begin by conducting a historical review of the subject.

From at least 1923 to 1975, the statute governing the termination of oral farm tenancies was straightforward and subject to very little interpretation. G.S. 1949, 67-506 stated: "In cases of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March: . . . ."

There was an exception, not applicable here, for tenants holding over under a prior written lease. For oral farm tenancies, however, the only relevant date was March 1. There were no exceptions, no references to other dates, and no consideration as to whether a crop had been planted or crop ground had been prepared for planting. A notice to terminate a farm tenancy had to terminate that tenancy on March 1, and it did terminate on that date regardless of the consequences. There was no *construed* date of termination.

Although the statute was simple and straightforward, it gave rise to some rather inequitable results. For example, in *Fox v. Flick*, 166 Kan. 533, 203 P.2d 186 (1949), the landlord sent the tenant a notice on December 20, 1946, terminating the tenancy effective March 1, 1947. The tenant pointed out that, on the date he received the notice, he had already worked the ground and planted the fall wheat crop, which was growing on that very date. If the lease were to terminate on March 1, 1947, it would deprive the tenant of the crop he had planted and result in a windfall to the landlord. This argument was to no avail. The statute made no exception for harvesting growing crops, and the tenant was unceremoniously ousted as of March 1, 1947. The Kansas Supreme Court cited *Bank v. Jesch*, 99 Kan. 797, 163 Pac. 150 (1917), and said: "The decision is a clear statement of the rule that even if a tenant is under the duty, by the terms of his lease, to sow a crop which does not mature until after his lease expires, he is not by that fact alone entitled to harvest the crop." 166 Kan. at 540. This rather harsh statement was then put into practice. The tenant in *Fox v. Flick* was removed from possession of the real estate on March 1, 1947, and forfeited his interest in the wheat crop he had planted.

In 1975, the legislature rewrote the statute in an obvious effort to protect the rights of the tenant and eliminate results such as that of *Fox v. Flick*. The statute was then changed to read as follows (the emphasized language indicates the addition to the statute in 1975):

"In cases of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March: *Provided, however, That as to that part of the farm which is planted to a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, the notice must fix the termination date of the tenancy to take place on the day following the last day of harvesting such crop or crops, or August 1, whichever comes first: . . . .*" L. 1975, ch. 294, § 1.

In 1978, the statute was redrafted to read as follows:

"58-2506. (a) *Except as may be otherwise provided by this section or by a written lease signed by the parties thereto,* in cases of tenants occupying and cultivating farms, the notice *to terminate such a farm tenancy must be given in writing at least thirty (30) days prior to the first day of March*

*and* must fix the termination of the tenancy to take place on the first day of March. ~~Provided, however. That~~

"(b) *When a notice of termination is given pursuant to subsection (a) after a fall seeded grain crop has been planted,* as to that part of the farm which is planted to a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, the notice ~~must fix the termination date of the tenancy~~ *shall be construed as fixing the termination of the tenancy of such portion* to take place on the day following the last day of harvesting such crop or crops, or August 1, whichever comes first." L. 1978, ch. 215, § 2.

The next change was prompted by *Grey v. Schmidt*, 224 Kan. 375, 581 P.2d 1180 (1978). At the time *Grey* was filed, the 1978 version of the statute was in effect, but *Grey* dealt with the 1975 version of the statute. The result of *Grey* indicates that, while the legislature had provided the rights of the tenant to harvest a *growing crop*, it had neglected to provide for the situation where there was no growing crop and the tenant had prepared the ground for seeding. In *Grey*, the notice was served on June 30, 1976, and terminated the lease on March 1, 1977, except for that part sown to growing wheat which was terminated August 1, 1976, pursuant to the statute. The problem came in timing. On June 30, 1976, the wheat was ready to harvest and was harvested within two weeks. The tenant had summer fallow for the 1977 crop, which would be planted in the fall of 1976, but not harvested until after the lease had expired. The tenant argued that he should be able to reenter and harvest in 1977. The Supreme Court held otherwise:

"On June 30, 1976, when the notice was received, the tenants had a wheat crop planted. The last day of harvest of this crop was July 6, 1976. Some of the other land was in summer fallow, which was to have been planted in wheat in the fall. So, the answer to the question, is a fall seeded grain crop planted, would have been affirmative if asked on June 30, 1976, but negative if asked on July 15, 1976 (after the harvest). Tenants did not have greater rights as to tenancy on June 30, 1976, than they did two weeks later. Words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute [Citations omitted]. In K.S.A. 58-2506 (in effect in 1976) 'is planted' means presently planted. We view the 1978 amendment of the language to 'after a fall seeded grain crop has been planted' as a clarification rather than a change in its effect.

"After the 1976 wheat crop was harvested, there was no land presently planted in a fall seeded grain crop. Therefore, the effective termination date

for the entire tract was March 1, 1977. The tenants, after receiving the termination notice, proceeded to prepare and plant another wheat crop. They did so at their own risk. Indeed, the notice expressly prohibited such endeavor." 224 Kan. at 377-78.

The result of *Grey v. Schmidt* was obviously inequitable, and it presented certain other problems. The lease did not expire until March 1, 1977, and the landlord had no right to possession until that time. A tenant whose lease was to terminate effective March 1 would be foolish to plant land to wheat in the fall when he could not harvest that crop the next year. It was obvious that, under *Grey v. Schmidt*, a potential existed for many acres to lay idle unless changes were made to accommodate the tenant who had worked the ground but had not planted the fall crop at the time the notice was given.

The 1979 legislature attempted to deal with *Grey v. Schmidt* by amending K.S.A. 58-2506 to add a new subsection (c), which then read as follows:

"(c) *When a termination of [sic] notice is given pursuant to subsection (a) after the thirtieth day preceding March 1 and prior to the planting of a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, in any year in which a fall seeded grain crop has been or will be harvested, the notice shall be construed as fixing the termination of the tenancy of that part of the farm devoted to fall seeded grain crops on the day following the last day of harvesting such crop or crops in the succeeding year or August 1 of such succeeding year, whichever comes first.*" L. 1979, ch. 175, § 1.

The emphasized language was the only substantial change made to the statute. The statute underwent very minor changes in 1981, but, in substance, has been unchanged since 1979.

We are concerned only with subsection (c), which was designed to obviate the decision in *Grey v. Schmidt*.

As we view the various versions of the statute, several goals become obvious. They are: (1) Retain March 1 as the basic date for terminating farm tenancies. The justification for this appears purely historical. That date is particularly appropriate if there is no land devoted to grain farming and/or no fall seeded grain crops. It is a very bad date, however, if there are fall seeded grain crops or fallow ground the tenant has prepared for seeding a fall crop. (2) Protect tenants who have planted a fall seeded crop so that they can reenter after March 1 and harvest that

crop. This is accomplished by K.S.A. 58-2506(b), which uses either the day following the last day of harvest or August 1 to terminate the lease as to growing crops. (3) Render *Grey v. Schmidt* impotent. This was done by K.S.A. 58-2506(c), which extends the tenancy until after the harvest of the succeeding year where the notice is given under circumstances described in the statute.

Although great confusion can result from contemplating the statutorily designed notice, we can reach some conclusions: (a) A notice fixing the date of termination on March 1 is sufficient to terminate an oral farm lease which falls within the statute, regardless of the circumstances. There is no need to refer to any other date or to growing crops or land prepared for growing crops. A notice fixing the termination date as March 1 will terminate the lease as to growing fall seeded crops on August 1 or the day after harvest. Such a notice will terminate the tenancy in the succeeding year on the day after harvest or August 1 under the circumstances described in K.S.A. 58-2506(c). The use of any date other than March 1 is not required. (b) In *Buckle v. Caylor*, 10 Kan. App. 2d 443, 445, 700 P.2d 979 (1985), Judge Abbott (now Justice Abbott) stated: "[W]e believe that a notice to terminate tenancy which sets forth a termination date 'pursuant to K.S.A. 58-2506(d)' is sufficient to comply with 58-2506(d)." We believe that the same can be said as to a notice pursuant to K.S.A. 58-2506(a), (b), or (c). Indeed, the simplest way to terminate a farm lease may be to simply state that it is terminated "pursuant to K.S.A. 58-2506(a), (b), (c), or (d)."

Having stated the obvious, we next turn to the notice in this lawsuit. In so doing, we enter uncharted territory. This is a case of first impression. The notice in this case did not "fix the termination of the tenancy to take place on March 1." We could simply agree with T and hold that the notice was ineffective because of its failure to use the date of March 1. While that result may be the most simplistic, it defies logic and offends one's sense of justice and reason. The notice in this case did not use the magic date of March 1, but it did terminate the tenancy on the precise date ultimately contemplated by statute. Had this notice fixed the termination date as March 1, 1989, it would have been *construed* to terminate the tenancy on August 1, 1989. The

notice advised the tenant that his lease would terminate August 1, 1989. The question, then, is whether this notice was defective because it used the actual date of termination rather than the preferred but fictional date of March 1. We think not.

To reach this conclusion, we hold that the notice in this case was in substantial compliance with the provisions of the statute and was effective to terminate the lease on August 1, 1989. The conclusion is supported by well-known rules of statutory construction.

The interpretation of a statute is a question of law, and the function of the court is to give the statute the effect intended by the legislature. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 719, 792 P.2d 971 (1990). The cardinal rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. 246 Kan. at 719; *Gnadt v. Durr,* 208 Kan. 783, 785, 494 P.2d 1219 (1972); *Brown v. Tubbs,* 2 Kan. App. 2d 522, 525, 582 P.2d 1165 (1978).

A statute should not be given a construction that leads to uncertainty, injustice, or confusion if it is possible to construe it otherwise. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. at 719; *Lakeside Village Improvement Dist. v. Jefferson County,* 237 Kan. 106, 113, 697 P.2d 1286 (1985). A construction of a statute should be avoided which would render the application of the statute impractical or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act. *In re Adoption of Baby Boy L.,* 231 Kan. 199, Syl. ¶ 8, 643 P.2d 168 (1982). A statute subject to interpretation is presumed not to have been intended to produce absurd consequences, but to have the most reasonable operation that its language permits. If possible, doubtful provisions should be given reasonable, rational, sensible, and intelligent constructions. 231 Kan. at 209; *In re Gantz,* 10 Kan. App. 2d 299, 301, 698 P.2d 385, *rev. denied* 237 Kan. 887 (1985).

A statute is not to be given an arbitrary construction according to the strict letter, but one that will advance the sense and meaning fairly deducible from the context. *Mahone v. Mahone,* 213 Kan. 346, 350, 517 P.2d 131 (1973); *Brown v. Tubbs,* 2 Kan. App. 2d at 525. When the interpretation of one section of an

act, according to the exact and literal import of its words, would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law. *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, 252, 544 P.2d 791 (1975).

The doctrine of substantial compliance permits us to recognize as effective a notice which complies with the spirit and intent of the law but not with its absolute letter. Substantial compliance requires "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Banzer v. City of Wichita,* 237 Kan. 798, 801, 703 P.2d 812 (1985). See *In re Petition of City of Shawnee for Annexation of Land,* 236 Kan. 1, 13, 687 P.2d 603 (1984). We see nothing in the statute which prohibits application of the substantial compliance doctrine. In fact, as we noted in *Buckle v. Caylor,* 10 Kan. App. 2d at 445, this statute "lacks a critical feature often found in mandatory legislation, which is a provision describing the consequences of noncompliance. *Paul v. City of Manhattan,* 212 Kan. 381, 511 P.2d 244 (1973)." The absence of such a provision invites application of the theory of substantial compliance.

The notice in this case does not comply in every respect with the statutory requirements. It does, however, fix the day of termination on the precise date the statute prescribes to be the "construed" date of termination. The notice protects all of the tenant's rights, which the legislature has sought to protect under K.S.A. 58-2506(c). To hold this notice ineffective would produce an absurd consequence. By applying the doctrine of substantial compliance, we can produce a result entirely in line with the statutory scheme. Our result will advance the sense and meaning of the statute. A contrary result would only be dictated by an arbitrary construction of the strict letter of the statute.

We hold that the notice given to T by LL was in substantial compliance with the requirements of K.S.A. 58-2506(c) and was effective to terminate the tenancy as of August 1, 1989.

### DID THE TRIAL COURT ERR IN DIRECTING A VERDICT IN FAVOR OF LL?

After T had completed his testimony but prior to the resting

of his case, the trial court summarily terminated the litigation in favor of LL. In doing so, the trial court remarked:

"THE COURT: Gentlemen, I've heard the arguments and I've given this some reflection over the noon hour also, because I could see based upon the testimony of Mr. Roberts it was coming. You know, I think I frankly told you that in chambers.

"I'm going to sustain Mr. Boone's motion on the items that he's requested it to be done, particularly on *res judicata*, but further it was my understanding that we had, that this suit as this time was based on a subsequent agreement in the Fall of 1989. I think the pretrial order reflects that. That has not been supported by the testimony of your client. He has operated under the theory that he had a continuing lease of 1988 and I have ruled on that and I did so, I think, back in March.

"The only reason I let this go on *is* because I understood that there was a question to go to the jury concerning a subsequent agreement that occurred after the harvest of 1989 and prior to the planting of 1990. The evidence does not support that. Therefore, your motion is sustained. Mr. Boone, you'll draft a journal entry accordingly. The jury is discharged."

Although the order of the trial court was not given any particular designation, it had the effect of directing a verdict in favor of LL. Our standard of review, therefore, will be that applied in cases of a directed verdict.

We hold that the trial court terminated the litigation prematurely in favor of LL. It did so under the apparent theory that T's testimony did not support a new oral agreement between the parties. We disagree with the trial court's conclusions concerning the evidence of that agreement.

The trial court correctly ruled in favor of LL on all issues arising from the original lease of 1988. The parties and the trial court refer to "res judicata" as forming the basis of the trial court's action. This was not a case in which that doctrine applied. The trial court had previously ruled that the 1988 lease was terminated, and that issue was finally resolved. To the extent T sought to further litigate that issue or to submit it to the jury, the trial court correctly ruled in favor of LL. This ruling was not res judicata but more appropriately a decision that T was not permitted to litigate an issue previously determined by the court. The parties were bound by the decision that the lease was terminated and that was the law of the case. There was no error in directing a verdict on this issue.

However, there were other issues involved. In particular, T contended that his claim to the 1990 wheat crop was based on a new and different agreement between the parties. T testified that, after harvest in 1989, LL gave him permission to plant 100.7 acres of wheat for harvesting in the summer of 1990. We hold that the trial court erred in directing a verdict on that issue.

The motion for a directed verdict is provided for by K.S.A. 1991 Supp. 60-250. A prerequisite to the entertaining and granting of a motion for a directed verdict is that all of the evidence on the issue in question must be presented. *Hodges v. Lister*, 207 Kan. 260, Syl. ¶ 2, 485 P.2d 165 (1971).

"K.S.A. 60-250 allows a litigant to move for a directed verdict, and for judgment notwithstanding the verdict. In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is *required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence, the motion must be denied and the matter submitted to the jury. This rule must also be applied when appellate review is sought on a motion for directed verdict. Sampson v. Hunt*, 233 Kan. 572, Syl. ¶ 1, 665 P.2d 743 (1983)." (Emphasis added.) *Turner v. Halliburton Co.*, 240 Kan. 1, 6-7, 722 P.2d 1106 (1986).

We have reviewed the record in this case in the light of the standard quoted above. When all facts and inferences are resolved in favor of T, there remains a submissible issue on whether the parties entered into a new oral lease in 1989. Counsel for LL points to certain areas in his cross-examination as showing that T was relying only on the original 1988 lease. The interpretation of T's testimony depends on which "spin" is applied to it. Despite potentially damaging admissions, T's testimony, when all inferences are resolved in his favor, is consistent with his theory that there was a new lease for the 1990 wheat crop. Reasonable minds could reach different conclusions concerning this issue. It was an issue to be resolved by the jury.

The trial court terminated T's presentation prior to the resting of his case. The only witness who had testified was T. The trial court should have permitted T to present his other evidence on the subject before ruling on the motion. It is a prerequisite to the granting of a motion for directed verdict that all the evidence on the issue in question must have been presented. It was,

therefore, error for the trial court to direct a verdict prior to T's resting of his case.

T also asserted several counterclaims against LL. One of those claims was based on a lease of pasture ground, and the resolution of that claim appears to be entirely unrelated to the termination of the 1988 lease or whether the parties entered into a second lease in 1989. There appear to be unresolved issues on the counterclaims submitted by T. We are unable to tell from reading the record how these counterclaims could have been resolved on the basis of the evidence presented. At retrial, the factual basis for the counterclaims must be determined after all the evidence is submitted and a decision made at that time as to which of these claims needs to be submitted to the jury.

LL contends that T waived or lost the right to set up his counterclaims. LL argues that, by filing a motion to dismiss instead of an answer and counterclaims, T was barred from asserting his conterclaims by K.S.A. 1991 Supp. 60-213(a).

We disagree with LL's interpretation of the compulsory counterclaim statute.

Decisions of the Kansas Supreme Court on this issue have indicated that one can be barred from asserting compulsory counterclaims in a subsequent action. See *Mohr v. State Bank of Stanley,* 241 Kan. 42, 51, 734 P.2d 1071 (1987); *Haysville State Bank v. Hauserman,* 225 Kan. 671, 594 P.2d 172 (1979); *Stock v. Nordhus,* 216 Kan. 779, 781, 533 P.2d 1324 (1975).

The problem with LL's theory is that, despite T's motion to dismiss, this action was not dismissed. The counterclaims of T were not submitted in a subsequent action, but were submitted in the same action. There is no support for the proposition that, by filing a motion to dismiss, one waives the right to assert counterclaims in the same action regardless of the decision on the motion to dismiss. LL's argument that T somehow waived the right to submit the counterclaims is without merit.

The decision terminating the 1988 lease is affirmed. The action of the trial court in "directing a verdict" for LL on the existence of the 1989 lease is reversed and remanded for a new trial. On remand, particular attention should be paid to resolving the various counterclaims alleged by T.

Affirmed in part, reversed in part, and remanded.