(8 P.3d 55)

No. 83,380

VALERE OREBAUGH, *Appellant*, v. CARL LEATHERWOOD and MICHELLE LEATHERWOOD, *Appellees*.

Opinion filed July 14, 2000.

*Glen I. Kerbs*, of Patton, Kerbs & Hess, of Dodge City, for the appellant.

*Philip Ridenour*, of Ridenour and Ridenour, of Cimarron, for the appellees.

Before PIERRON, P.J., GERNON, J., and RICHARD M. SMITH, District Judge, assigned.

SMITH, J.: Valere Orebaugh appeals the district court's judgment declaring that Carl and Michelle Leatherwood substantially complied with the statutory requirements for termination of a farm tenancy and that Orebaugh was not entitled to plant wheat on a portion of the land in the fall of 1998.

Beginning in 1995, Orebaugh farmed a tract of ground owned by Norval and Keith Jackson. Their agreement was oral and was a year-to-year tenancy. This was a typical agrarian arrangement where the tenant received ⅔ of the crop produced and the owner received ⅓. It was customary in the vicinity to leave fallow a portion of the tillable acreage to accumulate moisture. This decision is made year to year depending upon weather conditions, market prices, and landowner preference.

The subject tract of farm ground consisted of 762 acres. On April 10, 1998, Orebaugh received a telephone call from the Leatherwoods informing him that they had signed a contract to purchase the entire tract of ground. In that conversation, they asked Orebaugh to follow normal practices and not to continuous crop the 381 acres that were planted to wheat at the time. At this time 381 acres were open. Orebaugh advised the Leatherwoods that since the property was being sold he was going to plant all open acres and continuous crop those acres currently under wheat.

After the telephone conversation, Orebaugh planted the open 381 acres to milo. The Leatherwoods filed their deed to the real estate on May 29, 1998. On June 25, 1998, Orebaugh completed harvesting the 381 acres of wheat planted in the fall of 1997. On June 26, 1998, Orebaugh was served with a notice to terminate his farm tenancy specifying that his tenancy to the ground on which the wheat crop was planted would expire on August 1, 1998, or the day following the last day of harvesting, whichever occurred first. Further, it provided his tenancy to the ground on which the 1998 milo crop was planted would expire on December 31, 1998, or the day following the last day of harvesting, whichever occurred first.

On or about June 29, 1998, the Leatherwoods took physical possession of the tract on which Orebaugh had harvested his 1998 wheat crop without Orebaugh's consent. At the time the Leatherwoods took possession of the ground, Orebaugh had not commenced preparing the ground for planting. The Leatherwoods then planted a portion of this 381 acres to wheat for harvest in 1999.

Orebaugh was allowed to harvest the 1998 milo, and the parties agree his tenancy to this tract thus ended. Orebaugh contends that he was entitled to replant the remaining 381 acres to wheat in the fall of 1998 for harvest in 1999, and he requested a declaratory judgment of the district court to establish this right.

This case involves the application of the provisions of K.S.A. 58-2506. The issue before this court is whether Orebaugh was entitled to plant wheat on the subject 381 acres in the fall of 1998. In order to resolve this question, we must determine which provision of 58-2506 is applicable and whether the Leatherwoods substantially

complied with the applicable subsection. The question is one of statutory interpretation over which our review is plenary. *Servos v. Corbett*, 26 Kan. App. 2d 385, 386, 987 P.2d 1132 (1999).

K.S.A. 58-2506 provides in pertinent part:

"(a) Except as may be otherwise provided by this section or by a written lease signed by the parties thereto, in cases of tenants occupying and cultivating farms the notice to terminate such a farm tenancy must be given in writing at least 30 days prior to March 1 and must fix the termination of the tenancy to take place on March 1.

"(b) When a notice of termination is given pursuant to subsection (a) after a fall seeded grain crop has been planted, as to that part of the farm which is planted to a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, the notice shall be construed as fixing the termination of the tenancy of such portion to take place on the day following the last day of harvesting such crop or crops, or August 1, whichever comes first.

"(c) When a notice of termination is given pursuant to subsection (a) after the 30th day preceding March 1 and prior to the planting of a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, in any year in which a fall seeded grain crop has been or will be harvested, the notice shall be construed as fixing the termination of the tenancy of that part of the farm devoted to fall seeded grain crops on the day following the last day of harvesting such crop or crops in the succeeding year or August 1 of such succeeding year, whichever comes first."

An exhaustive and elucidating historical analysis of 58-2506 can be found in *Mendenhall v. Roberts*, 17 Kan. App. 2d 34, 831 P.2d 568 (1992). After analyzing the interpretive cases and legislative amendments, the purposes to be accomplished by each subsection were described by the *Mendenhall* court:

"As we view the various versions of the statute, several goals become obvious. They are: (1) Retain March 1 as the basic date for terminating farm tenancies. The justification for this appears purely historical. That date is particularly appropriate if there is no land devoted to grain farming and/or no fall seeded grain crops. It is a very bad date, however, if there are fall seeded grain crops or fallow ground the tenant has prepared for seeding a fall crop. (2) Protect tenants who have planted a fall seeded crop so that they can reenter after March 1 and harvest that crop. This is accomplished by K.S.A. 58-2506 (b) which uses either the day following the last day of harvest or August 1 to terminate the lease as to growing crops. (3) Render *Grey v. Schmidt* [,224 Kan. 375, 581 P.2d 1180 (1978)] impotent. This was done by K.S.A. 58-2506 (c) which extends the tenancy until

after the harvest of the succeeding year where the notice is given under circumstances described in the statute." 17 Kan. App. at 40-41.

The circumstance in *Grey* that 58-2506(c) intended to protect was where the tenant "had worked the ground but had not planted the fall crop at the time the notice was given." *Mendenhall*, 17 Kan. App. at 40.

In this case, Orebaugh had not worked the ground or prepared it in conformance with normal practices in the area prior to receipt of the notice. Orebaugh merely *intended* to plant a subsequent wheat crop in the fall of 1998, which would have been harvested in the summer of 1999.

The provisions of 58-2506(b) are not applicable since a fall seeded grain crop had yet to be planted. Further, the provisions of subsection (c) are not applicable since Orebaugh had yet to prepare the subject ground in conformance with normal practices in the area. "When farmland has not been prepared by a tenant in conformance with normal practices in the area, K.S.A. 58-2506(c) is not applicable." *Buckle v. Caylor*, 10 Kan. App. 2d 443, Syl. ¶ 6, 700 P.2d 979 (1985). The mere intention to plant a crop is not sufficient to bring the tenant within the protections afforded by 58-2506(c).

The provisions of 58-2506(a) controlled the termination of the farm tenancy between Orebaugh and the Leatherwoods.

We must next address whether Leatherwoods substantially complied with this section.

The Leatherwoods' notice provided for termination of the farm tenancy on August 1, 1998. This was in error. Under 58-2506(a), the effective date of termination should have been set out as March 1, 1999. We must, therefore, determine the date a farm tenancy terminates when the written notice sets forth a date that does not comply with 58-2506(a).

K.S.A. 58-2506(a) requires that all notices to terminate farm tenancies must be in writing and fix the date of termination as March 1. If a fall seeded crop has already been planted (58-2506 [b]), or if the ground has been prepared for planting in compliance with normal practices (58-2506 [c]), the notice is *construed* to be August

1 or the day following the last day of harvest, whichever occurs first.

In *Mendenhall*, the landlord set forth the date of August 1 in the notice. Although a literal reading of the statute requires that notice set forth March 1 as the termination date, the court found that recitation of the actual effective date of the termination of the farm tenancy did not render the notice a nullity. 17 Kan. App. 2d at 41-42.

In *Becker v. McFadden*, 221 Kan. 552, 561 P.2d 416 (1977), the Supreme Court was called upon to interpret a notice to terminate a tenancy given under K.S.A. 58-2505. After determining that the landlord had given a notice providing that the tenancy would terminate on November 1, 1974, the court held that the tenancy was a farm tenancy and 58-2506 applied. Since no appropriate date had been given in the notice, the court ruled that the tenants were entitled to maintain possession until March 1, 1975. 221 Kan. at 554-55.

The logical extension of these rulings would conclude that when the written notice provides for a date of termination not contemplated under 58-2506, the legislatively determined date of termination controls. In the instant matter, termination of the tenancy on the subject tract occurred on March 1, 1999. Although Orebaugh had a right of possession until that date, he had no right to reenter the premises after March 1, 1999. While the Leatherwoods may have entered the premises prior to their legal right to do so, the net effect of their actions was no more than preventing Orebaugh from making expenditures toward the preparation of the ground and the planting of a fall seeded wheat crop to which he would have had no right to harvest.

Affirmed.