# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2619
_____

Annex Properties, LLC

*Plaintiff - Appellant*

v.

TNS Research International, formerly known as Research International USA, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 11, 2012
Filed: April 1, 2013
[Published]

_____

Before LOKEN, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

This is a commercial lease dispute governed by Minnesota law. The parties' predecessors entered into a renewable five-year lease of office space in Bloomington, Minnesota, that expired on May 31, 2011. The lease provided that if the Tenant, TNS Research International ("TNS"), did not vacate the premises upon expiration, "Tenant shall be a tenant at will for the holdover period." In early May, TNS's real estate

agent emailed the Landlord, Annex Properties, LLC ("Annex"), that TNS would not renew the lease but would hold over until "the end of June, worst case a couple weeks into July," while construction of its new office was completed.

TNS timely paid the June rent. On July 6, 2011, having heard nothing further, Annex called TNS's office in Ohio to request that a neighboring tenant be allowed access to a hallway in the leased premises. Annex was told that TNS "had moved out." On July 7, Annex received a letter from a TNS vice president stating:

> Please be advised that we have vacated the [premises] on June 30, 2011 thereby ending the holdover period as described in section 1.3 of the referenced Lease. Our obligation to pay rent ceased with the end of the holdover period. We have properly removed our furniture and trade fixtures.

On July 8, Annex responded: "We disagree with your letter dated July 7, 2011. I [have] attached the updated rent statement for your reference."

On October 7, 2011, Annex filed an Amended Complaint in Minnesota state court seeking $91,956.16 in unpaid rent and penalties owed under the lease for the months of July, August, September, and October 2011. TNS removed the action. Responding to the parties' cross motions for summary judgment, the district court concluded that the Supreme Court of Minnesota would no longer follow earlier decisions requiring strict compliance with a Minnesota statute that requires notice to terminate an at-will lease, Minn. Stat. § 504B.135. The court held that TNS's July 7 letter together with its earlier email was sufficient to terminate the holdover lease effective August 31, 2011. Accordingly, the court entered judgment for Annex for the rent owing for July and August, but not for September and October. Annex appeals, arguing the July 7 letter was not the notice of termination required by § 504B.135 as construed by the Supreme Court of Minnesota, and therefore TNS continued to be

bound by the terms of the unterminated lease. Reviewing this issue of statutory interpretation *de novo*, we reverse.

**I.**

Although the tenancy at will has a long history in Anglo-American common law, in Minnesota this real property estate is governed by statute. See Minn. Stat. Ch. 504B. As at common law, in a Minnesota tenancy at will, "the tenant holds possession by permission of the landlord but without a fixed ending date." § 504B.001, subd. 13. But unlike the common law rule, a tenancy at will in Minnesota may not be terminated by either party immediately upon oral or written notice to the other. Rather, § 504B.135(a), the statute at issue, provides:

> (a) A tenancy at will may be terminated by either party by giving notice in writing. The time of the notice must be at least as long as the interval between the time rent is due or three months, whichever is less.

Prior to enactment of this language in 1999, the same substantive limitation on the right to terminate an at-will lease was part of every codification of Minnesota landlord-tenant law since territorial days, with the earlier statutes using a synonym for termination that today seems rather archaic: "All estates at will . . . may be determined by either party, by three month's notice given to the other party . . . ." Rev. Stat. (Terr.) 1851, ch. 49, § 34; compare Minn. Stat. 1998, § 504.06.

In this case, it is undisputed that, by holding over after the term lease expired, TNS created a tenancy at will. Under Minnesota law, TNS's continuing obligation to pay monthly rent could then be terminated only by (i) Annex agreeing to a surrender of the premises, or (ii) a notice of termination that complied with § 504B.135(a); a tenant who simply vacates (abandons) premises leased under a tenancy at will does not end its obligation to pay rent. See, e.g., Maze v. Mpls.

Willys-Knight Co., 237 N.W. 612-13 (Minn. 1931).  Here, because Annex explicitly refused to accept surrender, the question is whether TNS gave an effective notice of termination.  Because a tenant's holding over waives or nullifies any prior notice of termination, the May email from TNS's agent cannot be the required notice, though it may be relevant in interpreting later communications.  See King v. Durkee-Atwood Co., 148 N.W. 297, 298 (Minn. 1914).  Thus, as the district court recognized, the dispositive question is whether the July 7 letter from TNS to Annex was an effective notice of termination under § 504B.135(a).

In Grace v. Michaud, 50 Minn. 139, 140-41, 52 N.W. 390, 391 (Minn. 1892), the tenant in a month-to-month lease notified the landlord that he was surrendering possession and returned the key to the premises.  The landlord refused to accept possession and, some months later, sued for four months' rent.  The Court affirmed a judgment for the landlord after a bench trial, concluding that the tenant's notice of surrender did not comply with the precursor to § 504B.135(a):

> The notice to quit is technical, and is well understood.  It fixes a time at which a tenant is bound to quit, and the landlord has a right to enter at a time at which the rent terminates.  The rights of both parties are fixed by it, and are dependent on it. . . .  [W]hen such consequences depend upon the notice to be given the notice should fix with reasonable exactness the time at which these consequences may begin to take effect.

Id. at 141.  In Eastman v. Vetter, 57 Minn. 164, 58 N.W. 989 (Minn. 1894),[1] the tenant under a holdover lease returned the keys to the landlord on August 31 with a notice stating, "[y]ou now have possession of said store," and paid the monthly rent to October 1.  The landlord refused to accept possession and sued for the October and November rent.  Citing Grace, the Court affirmed a directed verdict for the landlord because the notice was insufficient under the precursor to § 504B.135(a):

_____

[1]The facts in Grace and Eastman are set out only in the Minnesota Reports.

Such a tenancy could only be terminated by one month's notice in writing. . . . [The tenant's notice] was clearly insufficient. It did not terminate the tenancy on the day named, <u>and could not, by mere lapse of time, become effectual to terminate it on some other and later date</u>.

<u>Id.</u> at 166 (emphasis added). Annex argues that <u>Grace</u> and <u>Eastman</u> are controlling decisions that require judgment in its favor for the four months' rent at issue.

In interpreting and applying Minnesota law in this diversity case, we must follow controlling decisions of the Supreme Court of Minnesota. The task is not to mechanically apply past decisions of that Court. Rather, "it is the duty of the [federal court] in every case to ascertain from all the available data what the state law is." <u>West v. A.T. & T. Co.</u>, 311 U.S. 223, 237 (1940). Therefore, we will not follow even clear precedent from the Supreme Court of Minnesota if that Court has given "clear and persuasive indication" that it would no longer follow that precedent. <u>Id.</u> at 236; see <u>AIG Centennial Ins. Co. v. Fraley-Landers</u>, 450 F.3d 761, 767 (8th Cir. 2006).

The district court agreed with TNS's contention that there is "some conflict" between <u>Grace</u> and <u>Eastman</u> and two later decisions of the Supreme Court of Minnesota that require "substantial" rather than "strict" compliance with the notice requirement of § 504B.135(a), <u>Heinsch v. Kirby</u>, 26 N.W.2d 363 (Minn. 1947), and <u>Hyman Realty Co. v. Kahn</u>, 271 N.W. 248 (Minn. 1937). The court concluded that the Supreme Court of Minnesota would follow these more recent precedents, not <u>Grace</u> and <u>Eastman</u>; that TNS's July 7 letter satisfied the substantial compliance standard; and therefore that the notice was sufficient to terminate the holdover lease on the first possible date, August 31, 2011. <u>See</u> <u>Johnson v. Theo. Hamm Brewing Co.</u>, 4 N.W.2d 778, 781 (Minn. 1942) (valid notice given during a month cannot terminate an at-will month-to-month lease before the last day of the following month), <u>overruled on other grounds</u>, <u>Johnson v. O'Brien</u>, 105 N.W.2d 244, 247 (Minn. 1960). (TNS did not cross appeal the August 31 ruling.)

We disagree with the district court's reading of these Minnesota precedents. It is wrong to posit that the "substantial compliance" standard in Heinsch and Hyman represented an evolution away from the standard in earlier cases. The Supreme Court of Minnesota expressly applied the "substantial compliance" standard in Alworth v. Gordon, 84 N.W. 454 (1900), in affirming a jury verdict for a landlord who had given timely but deficient notice to terminate a month-to-month lease:

> It is true that a notice to quit only a part of the demised premises . . . is insufficient to terminate the tenancy . . . . But we must construe the notice . . . in a practical and common-sense way; for substantial, not technical, accuracy is all that is required in a notice to quit, given for the purpose of determining a tenancy.

Id. at 456 (emphasis added). One year later, in Waggoner v. Preston, 86 N.W. 335, 335 (1901), the Court repeated the statement in Alworth "that substantial, not technical, accuracy is required," noting that it was "in line" with an earlier decision, Petsch v. Biggs, 18 N.W. 101 (1884). Petsch pre-dated Grace and Eastman and presented an issue that was factually similar to Heinsch and Hyman. Moreover, some years after the decisions in Heinsch and Hyman, the Supreme Court stated, "Our decisions have consistently required strict statutory compliance" with the precursor to § 504B.135(a). Markoe v. Naiditch & Sons, 226 N.W.2d 289, 290 (Minn. 1975).[2] In our view, in meeting our obligation "to ascertain from all the available data what the state law is," the only fair reading of these Supreme Court of Minnesota cases is that there is no "conflict" that permits us to ignore the decisions in Grace and

_____

[2]Accord Koenig v. Koenig, No. 11-920, 2012 WL 762306, at *7 (Minn. App. Mar. 12, 2012) (prior statute required notice fixing time of termination "with reasonable exactness," citing Grace), review denied, May 30, 2012; Burlington Coat Factory of Minn., LLC v. Chapman, No. 07-1456, 2008 WL 4006736, at *3 (Minn. App. Sep. 2, 2008) (stating that Minnesota has not abandoned the "reasonable exactness" standard in Grace but concluding the lease at issue required a more general 90-day contractual notice).

Eastman. Rather, the references to "reasonable exactness" in Grace and to "substantial compliance" in Heinsch and Hyman must be read as being in essential harmony. We find no "clear and persuasive indication" that the Supreme Court of Minnesota would do otherwise.

Proceeding on that basis, the question of statutory compliance in this case cannot turn, as the district court reasoned, on the fact that TNS's July 7 letter reflected its "clear intent" to vacate the premises. A notice that the tenant is vacating the premises is, standing alone, indeterminate. It may signify abandonment (for example, if the tenant is insolvent); it may be a request that the landlord accept surrender, in which case the lease will terminate by agreement; or it may reflect the intent to terminate the lease unilaterally. As the Court explained in Grace, when the landlord's rights depend upon whether the tenant intends to unilaterally terminate, "the [statutory] notice should fix with reasonable exactness the time at which these consequences may begin to take effect." 50 Minn. at 141.

Viewed from this perspective, TNS's July 7 letter, even read in the context of its earlier May email, did not substantially comply with a statutory notice requirement that the Supreme Court of Minnesota has repeatedly said requires reasonable exactness. First, the letter was not a notice; rather, it responded to a landlord inquiry that reasonably assumed the holdover lease was still in effect. Second, the letter declared that TNS had vacated the premises. Under well-established Minnesota law, simply vacating leased premises does not terminate a lease unless the landlord accepts surrender of the premises. Finally, the letter made no mention of lease termination. In referring to TNS's prior action, it did not name a wrong termination date; it named no date at all, other than to confirm the oral advice that TNS had "moved out." No landlord with any familiarity with Minnesota law would construe this letter as a statutory notice of termination. Thus, Annex was on sound legal ground when it promptly responded that it did not accept surrender, a response which meant that a statutory notice of termination was required to terminate this holdover lease. In these

circumstances, the letter's statements that the holdover lease had ended and no more rent was owing were nothing more than erroneous legal conclusions. If the letter had clearly stated, "TNS intends to end the lease on August 31, 2011," we would have a different case.

For these reasons, we conclude that Annex is entitled to the relief requested in this lawsuit, four months' rent. The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

LOKEN, Circuit Judge, with whom Melloy, Circuit Judge, joins, concurring.

I join the opinion of the court. I write separately to address an additional issue that is certain to arise on remand. In a second action filed in the district court, which is being held pending our disposition of this appeal, Annex seeks rent for the months of November 2011 through May 2012. Annex Properties, LLC v. TNS Custom Research, Inc., No. 12-1174, Complaint (D. Minn. May 15, 2012). And at oral argument, Annex's counsel took the position that TNS continues to owe rent under the at-will tenancy because it has never sent a notice of termination that complies with § 504B.135(a).

This continuing, open-ended remedy is without precedent in the reported Minnesota cases. Although many landlords have prevailed when the statutory notice was not sent or was insufficient, the remedy with one exception has never exceeded more than a few months' rent. See Hunter v. Frost, 49 N.W. 327 (Minn. 1891) (six months); Finch v. Moore, 52 N.W. 384 (Minn. 1892) ("at least 2 months"); Grace, 50 Minn. 139 (five months); Eastman, 57 Minn. 164 (two months); Prendergast v. Searle, 77 N.W. 231 (Minn. 1898) (two months); Van Brunt v. Wallace, 92 N.W. 521 (Minn. 1902) (two months); King, 148 N.W. 297 (two months); Oesterreicher v. Robertson, 245 N.W. 825 (Minn. 1932) (one month); Maze, 237 N.W. 612 (four months). The

exception is Markoe, which cited the "strict statutory compliance" principle in affirming an award of more than one year's rent. But in that case, a subtenant who had agreed to pay monthly rent until his property was removed abandoned the premises without *any* written notice to the landlord, leaving property the landlord "hauled away and dumped as junk" pursuant to an order of the fire marshal sixteen months later. 226 N.W.2d at 290. These facts are so distinguishable that the decision provides no guidance in crafting an appropriate remedy in this case.

The remedial issue raised in Annex's second action, and argued more aggressively at oral argument in this case, has not been previously decided by the Supreme Court of Minnesota, which means the district court in the second action must predict how the issue would likely be resolved by that Court. In 1976, the American Law Institute adopted a more lenient remedial standard than Annex urges: "if the date stated in the notice for termination is not the end of a period or is too short a time before the end of a period, *the notice will be effective to terminate the lease at the earliest possible date after the date stated*." Restatement (Second) of Property, Landlord & Tenant, § 1.5, *cmt.* f (1977) (emphasis added). Many state courts have since adopted the Restatement rule in cases involving both contractual and statutory notice-of-termination provisions. See Steffen v. Paulus, 465 N.E.2d 1021, 1024 (Ill. App. 1984); Foster v. Schwickerath, 780 N.W.2d 746, 749-50 (Iowa App. 2009); Orebaugh v. Leatherwood, 8 P.3d 55, 58 (Kan. App. 2000); Sage v. Rogers, 848 P.2d 1034, 1039 (Mont. 1993); T.W.I.W., Inc. v. Rhudy, 630 P.2d 753, 757 (N.M. 1981); Mercer Cnty. Agric. Soc'y v. Barnhardt, 459 A.2d 811, 815 (Pa. Super. 1983); Morrison v. Smith, 757 S.W.2d 678, 681 (Tenn. App. 1988); cf. 49 Am. Jur. 2d, Landlord and Tenant, § 225.

Annex would no doubt respond that this rule, even if adopted, would not apply in this case because TNS *never* sent a notice of termination, unlike cases in which the tenant or landlord sent a notice of termination naming the wrong date or no date at all. But that assertion is questionable. TNS's Answer to the Amended Complaint in this

case asserted that its May and July communications provided written notice of termination, and its entire posture in the ongoing litigation has communicated its clear intent and belief that the holdover tenancy at will has terminated. Though we disagree with its legal conclusion in this case, I believe TNS's conducting of the litigation provides an unambiguous notice of intent to terminate the holdover lease that, applying the Restatement rule, would be effective "at the earliest possible date after the date stated," that is, no later than the filing of TNS's Answer in this case.

Although this reading of the Restatement's remedial rule would be contrary to a literal reading of the opinion in Eastman, and arguably the opinion in Grace, it is not in conflict with the remedy upheld in either case. And there is good reason to apply the Restatement rule in this fashion. The harm that Annex seeks to remedy by its prayer for an open-ended rent obligation is not harm addressed by § 504B.135(a), which protects the parties to an at-will relationship that is typically month-to-month. As one court noted in rejecting a similar remedy, "We do not believe that any legitimate interest would be served by penalizing a month-to-month tenant for his late notice by subjecting him to indefinite liability for rent." S.D.G. v. Inventory Control Co., 429 A.2d 394, 396 (N.J. Super. 1981). I believe the Supreme Court of Minnesota would agree and therefore adopt the Restatement rule, or a similar rule, in fashioning a remedy for an at-will notice of termination that failed to comply with § 504B.135(a). Indeed, that Court adopted a similar remedial approach in determining the consequences of an insufficient statutory notice of cancellation of an insurance policy in Jorgensen v. Knutson, 662 N.W.2d 893, 903-04 (Minn. 2003). Accordingly, I would not affirm an award of more than two months' rent in the second action, unless the Supreme Court of Minnesota has approved a greater remedy in response to a question certified by the district court.

_____