NOT DESIGNATED FOR PUBLICATION

No. 126,268

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEVIN THOMAS LEWIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Trego District Court; GLENN R. BRAUN, judge. Submitted without oral argument. Opinion filed May 17, 2024. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and PICKERING, JJ.

PER CURIAM: The central issue in this appeal is whether this court should change its longstanding interpretation of K.S.A. 2021 Supp. 8-1567, which sets forth three ways a person can be found guilty of driving under the influence (DUI) of alcohol. This statute provides:

"(a) Driving under the influence is operating or attempting to operate any vehicle within this state while:

(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in K.S.A. 8-1013(f)(1), and amendments thereto, is 0.08 or more;

(2) the alcohol concentration in the person's blood or breath, as measured within three hours of the time of operating or attempting to operate a vehicle, is 0.08 or more;

(3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." K.S.A. 2021 Supp. 8-1567(a)(1)-(3).

Devin Thomas Lewis asks us to read K.S.A. 2021 Supp. 8-1567(a)(2) to require alcohol concentration in a blood sample to be analyzed within three hours of operating, or attempting to operate, a vehicle to support a conviction for DUI. But our court has repeatedly rejected this interpretation on the grounds that it would lead to absurd and unreasonable results. Since at least 1986, this court has held the Legislature intended for the statute to require the alcohol concentration in the person's blood to be measured *from samples taken* within the statutory time frame, not that those samples must be also analyzed within that same time frame. See *State v. Zito*, 11 Kan. App. 2d 432, 434-35, 724 P.2d 149 (1986). Since Lewis has not persuaded us to change our views, we affirm his DUI conviction.

FACTUAL AND PROCEDURAL BACKGROUND

The parties have stipulated to the relevant facts, which are quite limited given the narrow scope of this appeal. In short, a Highway Patrol Officer suspected Lewis of driving while under the influence of alcohol. After the officer administered field sobriety tests and a portable preliminary breath test (which Lewis failed), he asked Lewis to submit to a blood draw and took him to a nearby hospital to collect the sample.

The parties agree that Lewis' blood was drawn within three hours of his operation of a vehicle. But the Kansas Bureau of Investigation (KBI) did not test the sample within that time frame. They also agree the blood tests results revealed the alcohol content in

Lewis' blood was over the legal limit. No one disputes the validity of the tests results or integrity of the sample.

After a bench trial on stipulated facts, Lewis was convicted of felony DUI, his third conviction, under K.S.A. 2021 Supp. 8-1567(a)(2). In making its ruling, the district court noted that the blood draw occurred within three hours of Lewis driving, and the analysis of the sample revealed his blood alcohol content exceeded 0.08.

The district court sentenced Lewis to serve a 12-month jail term and 12 months' probation, but it suspended the jail sentence pending Lewis' appeal; the court also ordered Lewis to serve house arrest or work release. Lewis timely appealed.

REVIEW OF LEWIS' APPELLATE CHALLENGE

On appeal, Lewis argues the State failed to present sufficient evidence to support his conviction because his blood sample was not analyzed to determine its blood alcohol concentration within three hours of his driving—it was drawn at the hospital within three hours but then preserved and examined by the KBI two weeks later. Specifically, he alleges that the plain meaning of the word "measured," as used in K.S.A. 2021 Supp. 8-1567(a)(2), "requires the State to obtain the results—that is, the actual alcohol concentration—of a blood draw within three hours of driving or attempting to drive."

*Preservation*

Before reaching Lewis' argument, we must first address the State's contention that Lewis' challenge is unpreserved. Kansas courts have long recognized that a defendant generally need not challenge the sufficiency of the evidence at trial to preserve the issue for appeal. See, e.g., *State v. Hilyard*, 316 Kan. 326, 330, 515 P.3d 267 (2022). But the State argues that Lewis' specific challenge presents a mixed evidentiary question that

3

required a contemporaneous objection to preserve it for appeal. In support of its argument, the State cites *State v. McClellan*, No. 115,164, 2017 WL 839720, at *17 (Kan. App. 2017) (unpublished opinion), in which we declined to reach the merits of a sufficiency of the evidence challenge that was based, in part, on the defendant's allegation that the blood test should not have been admitted due to the uncertainty of the measurement of the test. Here, Lewis does not challenge the admissibility of the blood test used to convict him, he argues that the test (which was properly admitted) was analyzed too late to satisfy the State's evidentiary burden. Because Lewis does not raise an evidentiary issue about the admissibility of the blood test but challenges whether that evidence supports his conviction, the issue is preserved for our review.

*Standard of Review*

When a defendant challenges the legal sufficiency of the evidence to support a verdict, we review all the evidence in a light more favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). And given the nature of Lewis' challenge, we must interpret K.S.A. 2021 Supp. 8-1567(a)(2), which presents a question of law over which appellate courts have unlimited review. See *State v. Keys*, 315 Kan. 690, 697, 510 P.3d 706 (2022).

*Rules of Statutory Construction*

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be determined. Accordingly, we must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. 315 Kan. at 698. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022).

4

When we are called to construe a statute's meaning, we must read it reasonably, practically, and in context:

"A construction of a statute should be avoided which would render the application of the statute impractical or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act. A statute subject to interpretation is presumed not to have been intended to produce absurd consequences, but to have the most reasonable operation that its language permits. If possible, doubtful provisions should be given reasonable, rational, sensible, and intelligent constructions.

"A statute is not to be given an arbitrary construction according to the strict letter, but one that will advance the sense and meaning fairly deducible from the context. When the interpretation of one section of an act, according to the exact and literal import of its words, would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law. [Citations omitted]." *Mendenhall v. Roberts*, 17 Kan. App. 2d 34, 42-43, 831 P.2d 568 (1992).

*Lewis' proffered interpretation is not reasonable or contextual*

K.S.A. 2021 Supp. 8-1567(a)(2) provides: "Driving under the influence is operating or attempting to operate any vehicle within this state while: . . . the alcohol concentration in the person's blood or breath, *as measured* within three hours of the time of operating or attempting to operate a vehicle, is 0.08 or more." (Emphasis added.) Thus, under (a)(2), if a blood or breath test reveals that a driver has a blood-alcohol content of 0.08 or higher within three hours of operating a vehicle, that driver was driving under the influence. The question we must answer is whether the Legislature intended the statute to require that blood be both drawn and tested within that time frame.

Here, the parties' disagreement centers on the use of the word "measured"—Lewis contends the term suggests that the alcohol concentration of a breath or blood sample

must be analyzed within three hours, while the State contends that the term simply refers to the blood test being administered. Lewis relies on the common dictionary definitions of the word 'measure' to support his position:

> "'Measure' means, per one source, 'the dimensions, capacity, or amount of something ascertained by measuring.' Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/measure. 'Measure' means, per another source, 'to discover the exact size or amount of something.' Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/measure."

Lewis contends these definitions show that, as used in K.S.A. 2021 Supp. 8-1567(a)(2), the term "as measured within" does not mean to obtain a sample for later measurement. And he also asserts that because "the Legislature intentionally chose the word 'measured,' as opposed to, say, the phrases 'as drawn within three hours' or 'as obtained within three hours,'" it must have intended that a defendant's blood alcohol content must be analyzed within the statutory time frame.

Under his logic, the Legislature intended for a blood work analysis to determine blood alcohol content must be performed within three hours of a defendant driving or attempting to drive. But our court has found this reading is illogical considering that an evidentiary blood test—unlike a breath test, which may be conducted on a breathalyzer machine administered at a police station—must be administered and analyzed by "a properly educated and practicing medical doctor, chemist, medical technologist, biologist, biochemist or toxicologist [who] has the necessary qualifications." *City of Abilene v. Hall*, 202 Kan. 636, 640, 451 P.2d 188 (1969) ("Courts are in accord that to be permitted to evaluate the findings or results of any chemical tests for alcoholic content of blood the witness must be an expert on that subject, having the proper academic background and practical experience."); see also *State v. Frazier*, No. 96,484, 2008 WL 440488, at *2 (Kan. App. 2008) (unpublished opinion) (finding that the Legislature meant the term "as measured" to mean the time the blood sample is drawn).

6

If the Legislature had intended to require the analysis of a blood sample's alcohol content to be conducted within three hours of a defendant driving or attempting to drive, it would be practically impossible for the State to prosecute a defendant under K.S.A. 8-1567(a)(2). As the State points out: "In many cases where a defendant is arrested for driving under the influence of alcohol and blood is taken, a qualified expert would be unavailable to test the blood for far more than 3 hours." Again, we must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020).

In *Frazier*, we squarely rejected the same question Lewis raises. There, we concluded, "when a blood test is involved, the term 'as measured' clearly refers to the time the blood sample is drawn." 2008 WL 440488, at *2. In reaching this conclusion, we looked to our prior interpretations of the statute in *Zito*, 11 Kan. App. 2d at 434-35, and *State v. Pendleton*, 18 Kan. App. 2d 179, 187, 849 P.2d 143 (1993), the legislative history of the statute, and caselaw from other jurisdictions examining similar DUI statutes. The *Frazier* decision noted that the language of the statute refers to the breath or the blood itself, not the measurement of that breath or blood—that is, the test itself, not the results of the test, must be conducted in the statutory time frame. This reading of the time requirement is logical considering a blood test that is drawn within three hours, and then preserved and tested later, will show the blood alcohol content that existed at the time the sample was taken. Considering that the measurement of blood alcohol concentration of a sample is fixed at the time the blood is drawn, not at the time it is later analyzed, Lewis' statutory argument is illogical.

Soon after *Frazier*, we reached the same conclusion in *Lambert v. State*, No. 99,114, 2008 WL 4849633 (Kan. App. 2008) (unpublished opinion). In that case, as part of a K.S.A. 60-1507 motion, a prisoner argued his counsel was ineffective for failing to object to the admission of his blood alcohol test results because his blood sample was drawn within the statutory time frame but not analyzed for several days. We echoed the

7

conclusion reached in *Pendelton* and *Frazier* that the statute required only that the defendant's blood be *drawn* within the statutory time frame. In that decision, we explained: "If this court were to accept Lambert's argument, then it seems that blood test results rarely would be admissible evidence. Frequently, blood tests require lab analysis that cannot occur immediately." *Lambert*, 2008 WL 4849633, at *4. We also stated:

> "Although an actual lab analysis of the blood test might occur later, this does not defeat the legislative intent of K.S.A. 2007 Supp. 8-1567(a)(2). As in this case, a blood sample can be properly sealed after extraction, and a forensic toxicologist can later analyze the level of alcohol concentration in the blood sample." 2008 WL 4849633, at *5.

We also noted in *Lambert* that this longstanding interpretation is contextually preferable because it coincides with K.S.A. 8-1013(f)(1), which defines "'[o]ther competent evidence'" that can be used to prove a violation of K.S.A. 8-1567(a)(1). Under K.S.A. 8-1013(f)(1), "'[o]ther competent evidence'" includes "[a]lcohol concentration tests obtained from samples *taken three hours or more* after the operation or attempted operation of a vehicle." (Emphasis added.) While blood samples must be drawn within three hours of operating or attempting to operate a vehicle to support a per se violation of K.S.A. 8-1567(a)(2), blood drawn outside that window can be used as "other competent evidence" to support a conviction under K.S.A. 2021 Supp. 8-1567(a)(1). And, like the defendant in *Lambert*, Lewis makes no argument that his blood alcohol test results should have been excluded under K.S.A. 8-1567(a)(1). *Lambert*, 2008 WL 4849633, at *5-6 (quoting *State v. Armstrong*, 236 Kan. 290, Syl., 689 P.2d 897 [1984], which found delayed blood tests are admissible because the delay impacts the weight and not the admissibility of such evidence).

We similarly find the Legislature did not intend the absurd and impractical construction Lewis proffers. We also presume the Legislature agrees with our longstanding interpretation since it has failed to modify the statute to adjust our reading.

8

*In re G.M.A.*, 30 Kan. App. 2d 587, Syl. ¶ 4, 592, 43 P.3d 881 (2002) (citing *Clanton v. Estivo*, 26 Kan. App. 2d 340, 343, 988 P.2d 254 [1999]) ("[W]hen the legislature fails to modify a statute to avoid a long-standing judicial construction of that statute, the legislature is presumed to agree with the court's interpretation.").

K.S.A. 2021 Supp. 8-1567(a)(2) requires a blood sample to be drawn within three hours of the defendant driving or attempting to drive a car, but it does not require that sample to be tested within that same time frame. And because Lewis' does not challenge the results of the blood test, but only its timing, his sufficiency argument fails. We therefore affirm his conviction.

Affirmed.