No. 48,114

Frank X. Becker, *Appellee*, v. Gerald McFadden, Brian McFadden and Bruce McFadden, *Appellants*.

(561 P. 2d 416)

Opinion filed March 5, 1977.

*John Berglund,* of Clay Center, argued the cause and was on the brief for the appellants.

*Elvin D. Perkins,* of Emporia, argued the cause, and *Jay W. Vander Velde,* also of Emporia, was with him on the brief for the appellee.

The opinion of the court was delivered by

Miller, J.: Frank X. Becker commenced this action against Gerald McFadden, Brian McFadden and Bruce McFadden to recover the balance claimed to be due under a lease agreement, and to recover possession of the premises, consisting of 720 acres in Lyon County, Kansas. The McFaddens' answer alleged that all rent had been paid, and that they were in possession under an oral farm lease which would not expire until March 1, 1975, as provided by K. S. A. 58-2506. They also filed a counterclaim with which we are not here concerned.

The case came on before the court for trial on April 9, 1975. Defendants, by inadvertence, failed to appear. The court heard evidence, and made these findings: that the parties entered into an oral farm lease for the entire farm "pursuant to Chapter 58 Section 2500 et seq." in late August or early September, 1972, and that defendants went into possession about that time; that defendants agreed to pay rent as follows: $25 per head for cows and $20

per head for yearlings for the pasturing season, April 15 through October 15, plus $250 per year for the farm house and improvements, and one-third of the row crops; that in April, 1974, plaintiff notified defendants of an increase in the pasture rent; that plaintiff properly gave defendants notice of termination of tenancy 30 days prior to November 1, 1974, "in accordance with the applicable Kansas law," and that the lease terminated November 1, 1974; and that defendants remained in possession as holdover tenants from November 1, 1974, until March 1, 1975. While the court made no specific finding, it is agreed that defendants paid all rent due, including amounts attributable to pasture, crop and improvements, except the increased pasture rate for 1974 and a few months' house rent which plaintiff claims amounts to $62.50. The court found that defendants owed rent of $2,117.50, less a credit of $545.81, and entered judgment for the difference, $1,571.69 and costs. The counterclaim was denied. The McFaddens had moved from the farm, so possession was not an issue. Upon the overruling of their motion for a new trial, defendants appeal.

The primary question before us is whether K. S. A. 58-2506 is applicable. The pertinent part of that statute has been the law of this state since 1868. It reads as follows:

"In cases of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March . . ."

The statute was amended July 1, 1975. The amendment, fixing a different termination date where fall-seeded grain crops are planted, is not here involved.

The evidence before the court consisted of the testimony of the plaintiff and various exhibits. Becker testified that he owned the land. He talked with the McFaddens in his office in July or August, 1972. They were down and looked over the farm and in a few days told Becker that they would rent it. The McFaddens were to pay rent computed as follows: $250 per year for the use of the house and outbuildings; one-third of the crops raised on the cultivated land; $25 for each cow and $20 for each heifer placed on pasture. The pasture was to be grazed only from April 15 to October 15. The former tenant moved out in August and the defendants went into possession sometime in September, 1972. Becker stated that he was willing to calculate the rent from November 1.

The first grazing season, the McFaddens did not take their cattle out of the pastures until sometime after the first of November,

1973. This irritated Becker and he told the plaintiffs that he was going to raise the pasture rent for the next year. In April, 1974, Becker told the defendants orally that the pasture rent would be $50 for cows and $35 or $40 for heifers. One of the defendants said, "We can't pay that." Becker replied that the least he would do was $45 and $35, otherwise the McFaddens could move. They remained, occupied the house, farmed the land, and used the pastures during 1974.

Becker gave the McFaddens written notice of termination of tenancy thirty days prior to November 1, 1974, fixing that date as the date of termination. Defendants remained in possession until February, 1975, and moved while this case was pending.

K. S. A. 58-2505 provides that all tenancies from year to year may be terminated by at least thirty days' notice in writing, given to the tenant prior to the expiration of the year. Plaintiff claims that since the defendants entered into possession of the farm in the fall, the lease ran from November 1 to November 1 and thus thirty days' notice prior to that date was sufficient to terminate the tenancy under section 2505.

The following section, K. S. A. 58-2506, supra, specifically deals with notices fixing the termination of farm tenancies. In *Way v. Swain,* 158 Kan. 238, 241, 242, 146 P. 2d 414, we discussed the applicability of the farm tenancy statute. Speaking of G. S. 1935, 67-506, now K. S. A. 58-2506, we said:

". . . [B]eing a statute of special application it would be controlling as against statutes of general application—under a general and well-settled rule of statutory construction. . . .

"The trial court rested its decision upon a general rule that where a tenant holds over beyond the term of the original lease, with the consent of the landlord, the law implies a continuation of the tenancy under the same terms and conditions as provided in the original lease. Assuming that to be the general rule, we still have section 67-506 [now K. S. A. 58-2506], which applies, without reservation, to tenancies of farm lands. Moreover, it is common knowledge that it is the usual practice in this state to terminate farm tenancies in accordance with that statute."

The evidence reveals an oral lease of a farm. The tenants occupied and cultivated it. Though they moved on with the assent of the landlord in the fall of 1972, they leased it and plaintiff rented it for the crop year 1973. The 1972 crop and pasture seasons were over, for all practical purposes. This was a farm lease, and we hold that K. S. A. 58-2506 applied to it. Thus any notice to terminate the tenancy was required to fix March first as the termination date.

No such notice was given. Defendants, holding over after March 1, 1974, were entitled to continue in possession until March 1, 1975.

The landlord gave no notice of any specific change in the amount of rent prior to the commencement of the term. According to his testimony he announced an increase during April, 1974, after the tenants had commenced their second year of occupancy.

The general rule is that when a tenant holds over his term with the consent of the landlord, express or implied, the law implies a continuation of the original tenancy upon the same terms and conditions. *Martin v. Hamersky*, 63 Kan. 360, 65 Pac. 637. This rule was followed in *Thomas v. Dudrey*, 208 Kan. 684, 690, 494 P. 2d 1039, and see *Way v. Swain*, supra, and 49 Am. Jur. 2d, Landlord and Tenant, § 1147, where the rule is set forth as follows:

"Rent on a holding over may be governed by a provision in the original lease . . . or by a new arrangement entered into between the landlord and the tenant. Likewise, statutes prescribing the effect of holding over may govern the question of rent. In the absence of such a statute, or a provision in the original lease, or a new arrangement, it is generally held that the terms of the original lease, as regards the amount and time of payment of the rent, apply. . . ."

The same rule is set forth in 52 C. J. S. Landlord and Tenant § 471:

"A tenant who, without having made any new or different agreement as to rent, holds over and retains possession of the demised premises after the expiration of a term subjects himself to a renewal or continuance of the liability to pay rent as fixed by the terms and conditions of the prior lease. . . ."

Had the landlord announced an increase in the rent more than 30 days prior to the commencement of the term, a quite different picture would be presented.

". . . It is quite generally held that if, before the termination of the term and before rights which the law implies have arisen by reason of holding over without notice, a landlord notifies his tenant for a fixed term that in case he holds over beyond the term he must pay a specified increased rental, the tenant will become liable for such rental if he in fact holds over and either remains silent with reference to the notice or fails to express his nonassent to the terms thereof. . . ." 49 Am. Jur. 2d, Landlord and Tenant, § 1148.

The rationale of that rule, however, has no application here, where the tenants were not given notice of the increase until after the commencement of the term. We find no cases, and none have been cited, enforcing changes in a lease announced unilaterally by one of the parties *during the term*.

We conclude that under the circumstances of this case, the

McFaddens as holdover farm tenants were entitled to occupy the farm during the crop year 1974 under the same terms and conditions, and at the same rental, as was fixed in the original oral contract between the parties. Defendants were not obligated to pay the increased pasture rent for the year 1974, and the entry of judgment against them for that amount was error.

The judgment is reversed, and the district court is directed to enter judgment in accordance herewith.