(700 P.2d 979)
No. 56,926

Jim Buckle, *Appellant,* v. Raymond Caylor, *et al., Appellees.*

—

Opinion filed June 13, 1985.

*Marian M. Burns,* of Burns & Burns, P.A., of Lyndon, for appellant.

*John L. Richeson,* of Anderson, Byrd & Richeson, of Ottawa, for appellees.

Before Parks, P.J., Abbott and Meyer, JJ.

ABBOTT, J.: This is an appeal by Jim Buckle, a farm tenant, from a judgment denying his motion for partial summary judgment and granting the Caylors, the landlord, judgment on the pleadings.

Buckle contends that summary judgment is inappropriate because material controverted questions of fact remain and also that the trial court erred in interpreting and applying the statutory law (K.S.A. 58-2501 *et seq.*) governing farm tenancies.

The trial court granted the Caylors judgment on the pleadings, but it is obvious that the trial court considered affidavits filed by the respective parties in arriving at its decision. When matters outside the pleadings are presented to and not excluded by the trial court, the case is treated as one for summary judgment. K.S.A. 60-212(b); *Mouber v. City of Prairie Village,* 6 Kan. App. 2d 972, 974, 637 P.2d 424 (1981). Thus, we are required to read the record most favorably to the tenant and give him the benefit of the doubt on disputed issues. Any disputed facts that will not affect the ultimate decision can be ignored by us in determining whether summary judgment was proper. *Secrist v. Turley,* 196 Kan. 572, 575, 412 P.2d 976 (1966).

As we see it, the controlling issue in this action is sufficiency of the written notice to terminate. The relevant consideration is the adequacy of the notice and its compliance with the statute, K.S.A. 58-2506, which is a question of law. We conclude that the disputed facts cited by plaintiff are not material and do not preclude summary judgment.

Buckle took possession of the property under a written lease which set the expiration date as December 31, 1978. When a tenant takes possession under a written lease, K.S.A. 58-2502 applies and it provides that when premises are leased for one or more years, and the tenant with the assent of the landlord continues to occupy the premises after the expiration of the term, the tenant becomes a tenant from year to year. The assent may be express or implied, and the law implies a continuation of the original tenancy upon the same terms and conditions. *Becker v. McFadden,* 221 Kan. 552, 561 P.2d 416 (1977). Buckle continued to farm the land in 1979, 1980, 1981 and 1982 with the assent of the landlord and thus held a tenancy from year to year.

To terminate a year-to-year tenancy that is holding over from a written farm lease specifying a termination date, notice to the

tenant must be given by the landlord in compliance with K.S.A. 58-2506(d).

K.S.A. 58-2506(d) provides that:

"Subject to the provisions of subsections (b) and (c), a farm tenant becomes a tenant from year-to-year by occupying the premises after the expiration of the term fixed in a written lease, in which case the notice of termination of tenancy must fix the termination of tenancy to take place on the same day of the same month following the service of the notice as the day and month of termination fixed in the original lease under which the tenant first occupied the premises. Such notice shall be written and given to the tenant at least 30 days prior to such termination date."

In our opinion, subsections (b) and (c) are not applicable to the facts of this case. The 1982 wheat crop had been harvested, but Buckle had not worked the land nor harvested the fall crops when he was given the written notice to terminate his tenancy. Buckle argues that he should have been allowed to work the fall cropland and plant wheat regardless of whether a valid termination notice was delivered.

Buckle argues that the statute requires that the notice of termination of tenancy fix the termination to take place on the same day and month as that fixed in the original lease (December 31); that the landlord's failure to specifically set that date out in the notice to terminate the lease is fatal, rendering the notice ineffective and voiding the termination of the tenancy.

We perceive the issue somewhat differently than the tenant does. For example, we believe that a notice to terminate tenancy which sets forth a termination date "pursuant to K.S.A. 58-2506(d)" is sufficient to comply with 58-2506(d). If that premise is correct, then the question becomes whether a termination notice that neither sets forth a termination date nor refers to the appropriate statute is sufficient to terminate the tenancy of a farm lease.

As we read subsection (d), it could be construed to mandate that the notice set forth the day, month and year the termination is to be effective. We believe this would be a strained construction and not consistent with legislative intent. The statute lacks a critical feature often found in mandatory legislation, which is a provision describing the consequences of noncompliance. *Paul v. City of Manhattan*, 212 Kan. 381, 511 P.2d 244 (1973).

We are of the opinion that the legislature intended to mandate that a landlord not fix a termination date inconsistent with

58-2506, which in the case at bar is a tenancy from year to year following a written lease expiring on December 31. The lease before us does not fix the termination of tenancy to take place on a date other than that fixed in the original lease.

Obviously, the better practice would be to set out both a reference to the applicable statute (in this case, 58-2506) and the correct date (in this case, December 31, 1982).

As we read 58-2506, subsection (a) applies to all farm tenancy termination notices *except* as may be otherwise provided for by a written lease *or* by this statute. Subsection (d) of the statute provides otherwise, thus subsection (a) appears to be inapplicable.

Subsection (d) is subject to subsections (b) and (c). Subsection (b) is inapplicable because it applies only when a fall seeded grain crop has, in fact, been planted. *Grey v. Schmidt,* 224 Kan. 375, 581 P.2d 1180 (1978). The legislature obviously added subsection (c) as a result of the strong dissent by Chief Justice Schroeder in *Grey v. Schmidt,* 224 Kan. at 378. That case dealt with an oral lease, and subsection (d) did not apply to it. Subsection (a) did apply, and the issue was whether subsection (b) did. The Supreme Court held subsection (b) applied only when a fall seeded crop had, in fact, been *planted.*

Buckle argues that subsection (c) applies and that he should have been allowed to work the land from which soy beans were harvested and plant it to wheat, which is a fall seeded crop. He argues that he had that right even if we hold that the notice to terminate the farm tenancy complies with 58-2506(d).

We do not so view subsection (c), although it does seem to apply to the facts of this case and although there are some obvious conflicts and inconsistencies between subsections (a), (c) and (d). For example, subsections (a) and (c) both set a termination date of March 1 and require that a tenant be given notice of the termination 30 days before March 1. The legislature used March 1 as a termination date because the fall seeded grain crops have been planted 30 days before that date and the spring seeded crops have not, and it is the logical time to terminate a farm tenancy when the parties cannot agree on a date. Subsection (d) obviously conflicts with (b) and (c) in that it requires the termination date to be the same day and month as that stated in the original lease rather than March 1. The conflict caused by the

inconsistencies in the subsections—that (a) does not apply because (d) is applicable, and both (b) and (c) are contingent upon (a)'s being applicable—probably could be handled by statutory construction to the effect that (d) states it is subject to the provisions of (b) and (c), thus (c) applies.

The conflict in dates is another matter. If we believe that in adopting 58-2506(c) and (d) the legislature intended for (c) to apply only to fall seeded grain crops (almost exclusively wheat), then (d) would apply to all crops except wheat. Therefore, a year-to-year tenant occupying the premises after the expiration of the term fixed in the written lease could hold summer fallow land, and possibly other land intended for fall planting, for an additional crop year unless notice is given at least 30 days before March 1, despite the termination date set in the prior written lease, and the right to occupy the remainder of the cropland would terminate as of the date fixed in the prior written lease provided notice is given at least 30 days before the termination date.

If that is correct, then Buckle could maintain possession and harvest the wheat crop; but as to the spring and summer planted crops, he would only be reimbursed for the reasonable value of services furnished for customary tillage and the application of fertilizers, herbicides and pest control substances as well as the reasonable value of the fertilizer, herbicides and pest control substances. K.S.A. 58-2506a.

In this case we need not determine what the legislature intended, for we are of the opinion that even if the legislature had intended (c) to apply to a year-to-year tenant who occupies the premises after the expiration of the term fixed in a written lease, (c) still would not apply to the facts here. The 1982 wheat crop had been harvested and that land had not been worked by the tenant at all, so it cannot be said it was prepared in conformance with normal practices in the area as is required by subsection (c). As to that land, in our opinion subsection (c) does not apply. Assuming a valid notice is given pursuant to 58-2506(d) sufficient to terminate the tenancy under consideration after a fall seeded grain crop has been harvested from other land, and the tenant has notice prior to harvesting a spring planted crop, the question becomes: Can that tenant work and seed that land to a fall planted grain crop?

In determining legislative intent, words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute. Subsection (c) was added by the legislature in response to an oral lease to prevent an injustice and to reflect public policy that land ought not to lie idle because of operation of the law. Here the parties had agreed on a termination date in a written lease; at the time the lease was executed, as it does now, 58-2506 (L. 1975, ch. 294) provided that a notice to terminate a holdover tenant must fix as the termination date the same month and day as the original lease.

The legislature limits the application of subsection (c) in the amendment to "cropland which *has been prepared* in conformance with normal practices in the area." (Emphasis supplied.) In the same sentence, the legislature used the language "has been *or will be* harvested." This obviously demonstrates that the legislature had in mind the difference between past and future action by the tenant. Having so clearly demonstrated that awareness in the same sentence, we conclude the legislature did not intend subsection (c) to apply to land on which no work had been performed preparatory to planting a fall seeded grain crop. The legislature has clearly demonstrated that it could have easily changed the results imposed by subsection (d) if it had wanted to do so by stating "has been or *will be*" prepared, just as it did in the same sentence concerning harvest. We therefore conclude that the legislature intended the parties' agreement fixing the month and day of termination to control.

In this case there was no preparation of any kind, although the tenant contends he purchased a combine in preparation for the next year's harvest. We have no difficulty concluding that the purchase of personal property in the form of farm equipment is not what the legislature contemplated when it refers to "cropland which has been prepared" in subsections (b) and (c).

The trial court did not err in terminating the tenancy as to the land described in the notice to terminate. The notice is specifically limited to the real property described therein. Five legal descriptions totaling 505 acres are set out in the original lease. One quarter-section is divided by a river, and it is described in the original lease as "All E River In NE ¼ of 34-17-21" and "All W River In NE ¼ of 34-17-21." Due to an oversight, the land in the northeast quarter of 34-17-21 lying west of the river was not

included in the notice to terminate tenancy. The pleadings before us state that 31 acres lie west of the river. The pleadings show that Buckle raised the issue that the written notice to terminate tenancy did not describe all of the real estate, although the tenant did not specify in the record what real estate was not included in the notice.

The record before us does not indicate whether that issue was raised when the motion for summary judgment was heard. The trial judge did include that description in his judgment. The appellant has the responsibility of furnishing a record establishing error. The record before us does show that the issue involving the legal description of the 31 acres was raised in the pleadings. It does not, however, contain the motion for judgment on the pleadings (it appears one was not filed) nor a transcript of oral argument on that motion. The judgment does not mention the issue and it appears from the record that the trial judge's attention was never directed to it. We therefore do not consider that issue on appeal.

Affirmed.