(95 P.3d 648)
No. 90,805

CONCRETE ACCESSORIES CO., INC., a Kansas Corporation, *Appellee*, v. PAUL Z. MOSES and RUTH E. MOSES, *Appellants*.

Opinion filed August 13, 2004.

*Robert T. Cornwell* and *Robert L. Nicklin*, of Wichita, for the appellants.

*John Terry Moore*, of Moore Martin, L.C., of Wichita, for the appellee.

Before ELLIOTT, P.J., PIERRON and GREENE, JJ.

PIERRON, J.: In this declaratory judgment action involving a commercial real estate lease, appellants Paul Z. Moses and Ruth E. Moses appeal the trial court's decision that they were estopped and/or waived their right to assert a breach of contract and that appellee Concrete Accessories Company, Inc., properly exercised its option to purchase the property under the lease agreement. Appellants argue appellee did not have an option to purchase due to its status as a holdover tenant and the trial court's conclusion on estoppel and waiver is not supported by substantial competent evidence. We affirm.

The facts in this case are for the most part undisputed.

On January 18, 1996, appellants entered into a written lease with appellee for commercial real estate and buildings commencing on March 1, 1996, and terminating on February 28, 1999. Rent for

the property, which was divided into two parcels, was a combined amount of $4,700 per month for the first year, $4,800 per month for the second year, and $4,900 per month for the third year. The lease also provided that appellee would pay all the real estate taxes at the 1995 assessment levels and appellants would be responsible for any tax amount in excess of the 1995 assessment levels. Appellee had the right to make any additions or improvements at its expense.

The parties contemplated possible renewal of the lease for three additional 3-year periods. Paragraph 2(h) provided:

"Lessee will have the option to renew this lease, for three additional periods of three years, upon 90 days written notice to Lessor. The rental rates for the combined Parcels 1 and 2 for the option periods are as follows:

| Option period 1 | $5,000 per month |
| Option period 2 | $5,250 per month |
| Option period 3 | $5,500 per month |

"All other terms and conditions remain unchanged."

The lease also allowed appellee an option to purchase the subject property. Paragraph 17 provided:

"Lessor does hereby grant to Lessee, solely as additional consideration for the rent to be paid by Lessee hereunder, the exclusive option to purchase both Parcel 1 and Parcel 2 for the aggregate sum of $400,000.00 In addition to Lessee's purchase option, Lessee is also hereby granted by Lessor a right of first refusal regarding any sale of Parcel [*sic*] and Parcel 2."

On January 20, 1999, the accountant for appellee sent a letter to appellants concerning the payment of real estate tax provisions in the lease and appellants' failure to timely pay certain back taxes. Appellee stated it would pay the back taxes and then offset the amount by reducing its rent payment by a proportionate amount over the next 9 months. The letter contemplated a continuation of the lease:

"Our proposed solution to this situation would be to withhold an amount from your lease payment every month, beginning March of 1999 until the amount is resolved. We would withhold $600 in March, and $1,000 each month until the end of 1999 (9 months) which would satisfy the $9,600.00 overpayment. We propose that, in the future, we will pay the full amount we owe for each year,

$6,347.21 directly to you prior to December 20 of each year, and you will be responsible for paying the tax to the county."

Appellee gave no other formal written notice that it was extending the lease for the first 3-year option period. On February 28, 1999, the original 3-year term expired without comment by any party. Beginning with the rent due in March 1999, appellee paid the increased rental amount of $5,000 due under the first 3-year option period with no objection by appellants. Appellee continued to deduct the amount of back taxes owed by appellants.

Gregg Fuson, appellee's financial manager, testified that he did not have any problems understanding the renewal provisions of the lease and that he did not give the required notice to renew the lease. Fuson stated it was his understanding of local practice with regard to commercial leases that written notice, even though called for in the lease, was not sent. Instead, he believed that payment of the first rental payment in the renewal period would create a renewal of the lease.

From 1999 through 2001, the parties continued the relationship of increased rent payments and a deduction of back taxes. On January 18, 2002, appellants, through their attorney, sent a certified letter informing appellee that the lease had expired on February 28, 1999, that appellee had failed to exercise the option to renew the lease, and that appellee was a tenant at will. The letter stated the tenancy would be terminated as of midnight on February 28, 2002. On January 29, 2002, appellee, through its attorney, sent a letter informing appellants that the parties had been acting in accordance with the lease agreement throughout the first option period and that appellants had continually accepted the benefit of the lease agreement and could not now deny the existence of the terms of the lease.

On February 21, 2002, appellee filed a petition for declaratory judgment seeking a finding that the lease agreement was valid and binding and that appellee had either exercised both the first and second option periods or that appellants had waived any requirements for notice of renewal. On February 26, 2002, appellee gave notification that it was exercising its option to purchase the prop-

erty for $400,000 pursuant to the terms of the lease. The trial court established an escrow account for $400,000.

Appellee filed a motion for partial summary judgment seeking a ruling that appellee properly exercised the option to purchase in the lease agreement and it was enforceable as a matter of law even if appellee was only a month-to-month tenant as asserted by appellants and/or was a year-to-year holdover tenant pursuant to K.S.A. 58-2502. The trial court stated in its ruling from the bench:

"And that means the question for the court this afternoon -- and Counsel are in agreement, it's a question of first impression in Kansas -- is, where you have a holdover tenant on a year to year basis and the holdover tenant is a holdover from a written lease, do all of the terms of that lease continue to be in effect.

"I find under the terms of this lease that they do. The lease itself recognizes that part of the consideration for the lease payments or rent, as it's called, is the option to purchase the two parcels, and I find that that distinguishes it from most of the case -- well, actually, all the cases cited by the parties. There are no cases that are exactly [on] point, unless they're covered by a statute, and that takes them out of point, I guess.

"But I find as a matter of law that paragraph number 17 of the January 18, 1996 lease remained in effect . . . on . . . February 26th of 2002."

Following the ruling on summary judgment, the trial court conducted a hearing on issues surrounding whether appellee exercised the first option to renew and whether appellants were estopped or waived any objection to appellee's failure to properly exercise the option.

The trial court found appellee did not strictly comply with the option to renew for the first 3-year option period. The court concluded that both parties ignored some terms of the lease agreement but there was no offsetting clean hands doctrine because appellee invested substantial funds into the renovation of the property, appellee paid the real estate taxes which were appellants' obligation, and appellee paid the increased rent amount consistent with the first option to renew lease period. The court held appellants were estopped and waived their right to assert a breach 2 years and 11 months into the first 3-year option to renew period and that appellee properly exercised its option to purchase the property under the lease agreement.

Appellants argue there was not substantial competent evidence to support the trial court's waiver and estoppel conclusions of law.

The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001).

Appellants argue it is undisputed that appellee did not give the proper notice of renewal pursuant to the lease and that the first time appellee gave actual notice that it had exercised the first renewal option was on January 29, 2002. Appellants state they had no obligation to remind appellee of its right to renew, or to inform appellee that it had not given the proper notice to review, or to notify appellee that it was a holdover tenant, or upon receipt of the increased rental check to inform appellee that it was not pursuant to the first renewal option. Appellants also argue there is no substantial evidence in the record of any dates or costs of renovations made to the subject property.

Appellants contend their acceptance of the increased rent does not constitute wavier or estoppel of their right to assert any breach of lease issues. They cite *Hudson Oil Company of Mobile, Inc. v. McLeod*, 424 F.2d 1269 (5th Cir. 1970); *Vuci v. Nathans*, 357 So. 2d 561 (La. App. 1978); *Dyer v. Ryder Student Transp. Services*, 765 A.2d 858 (R.I. 2001). Appellants state that appellee never told them if they accepted the increased rent that it constituted a renewal of the first option period of the lease and appellants believed appellee was paying the additional rent as a holdover tenant. Appellants state there was confusion about which party would pay the taxes, but apparently argue they were not required as a result of all the correspondence about the taxes to notify appellee they did not consider the correspondence to be a notice of renewal.

Appellants' authority concerning acceptance of increased rent is unconvincing. In *Dyer* and *Vuci*, the courts did not even discuss the increased rent and, in fact, the court in *Vuci* stated there was some testimony that the lessee did not wish to extend the lease and

that his continued occupancy was under a new verbal agreement. The court in *Hudson* stated that "[w]aiver cannot be implied from the facts here, including acceptance of increased rent. It must be manifested in some unequivocal manner not found here." 424 F.2d at 1271. The court in *Hudson* cited *McIntyre v. Coker*, 274 Ala. 457, 150 So. 2d 220 (1963), which is more in line with the waiver facts presented in the case at bar.

In *McIntyre*, Coker was the lessee of property under two leases with primary terms expiring on December 31, 1956. Both leases contained provisions allowing for renewal for two additional 5-year periods if written notice were given at least 30 days prior to the expiration of the primary term and again at the end of the first renewal term. Coker did not give written notice, but the lessor continued accepting rent after the end of the primary term without mentioning the failure of notice to renew. On December 8, 1960, the lessor sold the property to McIntyre, who demanded possession of the property from Coker. Coker filed a declaratory judgment action, and the trial court held that both leases had been legally extended to December 31, 1961, and that Coker had the right to a second 5-year extension provided for in the lease.

The *McIntrye* court affirmed the trial court, stating:

"In so far as we are advised, this court has not been called upon heretofore to pass on the question as to whether a holding over and payment of rent is sufficient to constitute a renewal of the lease for the additional term, at the same rental, when the lease provides for the lessee to give to the lessor written notice of the lessee's intention to renew.

"The courts of other states are not in agreement, but we believe the better view to be that where there is no distinction between a 'renewal' provision and one for the extension of the lease, as is the rule in this state, a lessee who enters into possession of the demised premises under a lease for a fixed term, with the privilege of renewing it by giving written notice to the lessor, and continues in possession after the fixed term has expired, paying the rent therefor as it becomes due, thereby elects to exercise the option for a renewal, although no written notice was given. In such a lease the requirement of a written notice may be waived by the parties, and a waiver may be implied when the lessee remains in possession and pays the rent to the lessor. [Citations omitted.]" 274 Ala. at 461.

Appellants also argue the trial court's decision conflicts with *Duffy v. Casady*, 29 Kan. App. 2d 549, Syl., 28 P.3d 1040 (2001),

wherein the *Duffy* court stated: "[E]quity could not be invoked to extend or renew a commercial lease that has already expired by its express terms." There, the lessee gave proper notice of renewal for several renewal periods, but when the lessee mistakenly missed the date for proper notice, the lessor *immediately* terminated the lease. The facts in *Duffy* are not similar to the present situation.

Whether there is a waiver of timely notice of exercising an option is a question of fact to be determined from the circumstances indicating the intention of the parties. Waiver may be inferred from the conduct of the parties. 49 Am. Jur. 2d, Landlord and Tenant §§ 186, 187 (1995); see *Wharf Restaurant v. Port of Seattle*, 24 Wash. App. 601, 609, 605 P.2d 334 (1979).

Appellants argue estoppel does not apply because there is nothing they did upon which appellee relied to its detriment. Appellants argue waiver does not apply because appellee did not produce any evidence proving they waived the provisions in the lease requiring 90 days' written notice in order to renew the lease.

A party asserting equitable estoppel must show that another party, by acts, representations, admissions, or silence when he or she or it had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The trial court's decision that appellants waived their right to challenge appellee's failure to give proper notice is supported by substantial competent evidence. Appellants cannot claim they did not contemplate an extension of the written lease. This case does not involve a lease without any renewal options. Rather, it involves a written lease with three additional option or renewal periods. Prior to the expiration of the primary term of the lease on February 28, 1999, appellee sent appellants a letter dated January 20, 1999, detailing how the property taxes would be subtracted from the rent payments through the end of the year, which time frame continued into the first renewal option period. The parties continued through the first option period in compliance with an apparent renewal of

the lease. Appellants accepted, without objection, the timely rent payments for 35 of the 36 months in the first option period before alleging a default in the notice of renewal. Appellee paid its monthly rent and increased the rent payment in line with the increases contemplated in the written lease.

We agree with the trial court that appellants waived any breach of the lease through their acceptance of material or substantial performance of the first renewal option.

Further, appellants do not dispute the improvements made to the property, only that the evidence does not indicate the exact date of the improvements and their cost. The testimony at trial included evidence that appellee improved the property by stuccoing one of the buildings, paving the parking lot, fencing portions of the property, remodeling the interior of a building, and repainting all six large buildings on the property.

There is also substantial competent evidence, based on undisputed evidence, that appellee exercised its option to purchase on February 26, 2002, prior to the expiration of the first 3-year renewal period. Appellee gave written notification that it was exercising its option to purchase the property for $400,000 pursuant to the terms of the lease. Appellee was in the third year of the first 3-year renewal period. The first 3-year option period would have expired on February 28, 2002. There is substantial competent evidence to support the trial court's decision that appellee properly exercised its option to purchase.

Appellants argue that appellee, as a holdover tenant, does not have the option to purchase the property. Appellants state the option to purchase expressly expired upon the termination or expiration of the lease and in this case the lease expressly terminated on February 28, 1999. They argue that by definition to be a holdover tenant the underlying lease has to terminate or expire. Appellants argue the trial court erred in construing the unambiguous terms of this lease to create a wholly unexpressed option to purchase by a holdover tenant.

Appellants further argue the option to purchase is not available to holdover tenants. They cite multiple jurisdictions that have held that a holdover tenant cannot exercise an option to purchase. See

generally 49 Am. Jur. 2d, Landlord and Tenant § 418; Annot., 15 ALR3d 470.

Kansas has a holdover statute, but it does not specifically address the option to purchase. See K.S.A. 58-2502 ("When premises are let for one or more years, and the tenant with the assent of the landlord continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant from year to year."); compare Wis. Stat. § 704.25(3) (2001) ("A periodic tenancy arising under this section is upon the same terms and conditions as those of the original lease except that any right of the tenant to renew or extend the lease, or to purchase the premises, or any restriction on the power of the landlord to sell without first offering to sell the premises to the tenant, does not carry over to such a tenancy."). The problem for appellants in this case is that appellee was not a holdover tenant. Instead, as seen above, appellee occupied the subject property pursuant to the first 3-year renewal option of the written lease.

The issue facing the court is whether the option to purchase carries over to the renewal period under a written commercial lease. An appellate court's review of conclusions of law is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

Contrary to the holdover situation suggested by appellants, courts as a general rule hold that where an original lease or agreement to lease provides for an extension or renewal of the lease at the tenant's election and where the tenant elects to renew the lease or extend its term, the time for exercising a purchase option contained in the lease and exercisable during the term of the lease is likewise extended. See *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.*, 40 Colo. App. 150, 154, 574 P.2d 107 (1977); *Ardito v. Howell, et. ux.*, 29 Del. Ch. 467, 473, 51 A.2d 859 (1947); *Sisco v. Rotenberg*, 104 So. 2d 365, 374 (Fla. 1958); 49 Am. Jur. 2d, Landlord and Tenant § 416, p. 357.

The court in *III Lounge, Inc. v. Gaines*, 217 Neb. 466, 472, 348 N.W.2d 903 (1984), stated:

"We hold that absent words of express limitation, when a lease confers on the lessee an option to purchase the property at any time during the term of the lease,

and the lease is thereafter extended upon the same terms and conditions, the option to purchase is also extended for the period of the extended term."

Appellants contend the trial court erred in construing the lease by focusing solely on the language that the option to purchase was granted "solely as additional consideration for the rent to be paid by Lessee [appellee] hereunder." Although the trial court was analyzing the additional consideration in the context of a holdover tenant, that language is equally applicable as additional consideration for the option to purchase. This language of the lease also indicates the inseparable nature of the option and the leasehold. See *Country Club v. Hinckley*, 229 Mich. 291, 201 N.W. 190 (1924); compare *Carter v. Frakes*, 303 Ky. 244, 197 S.W.2d 436 (1946) (leasehold and option were separate and option did not carry into renewal period); *Pettit v. Tourison*, 283 Pa. 529, 129 A. 587 (1925).

We note the language of the lease stated that when the lease was extended, except for the rent, "[a]ll other terms and conditions remain unchanged."

We hold appellee occupied the subject residence under the renewal options of the written lease and appellee properly exercised its option to purchase the property before expiration of the first 3-year renewal period.

Affirmed.

GREENE, J., concurring: I fully agree with most of the holdings and the result of the majority opinion but write only to suggest a more direct and straightforward analysis of the issues framed. *First,* when the tenant with consent continues to occupy leased premises after expiration of the term, tenant is deemed to be a tenant from year to year. K.S.A. 58-2502. *Second,* the general rule in Kansas is that when a tenant holds over with the consent of the landlord, express or implied, *the law implies a continuation of the original tenancy upon the same term and conditions. Becker v. McFadden,* 221 Kan. 552, 555, 561 P.2d 416 (1977); *Thomas v. Dudrey,* 208 Kan. 684, 690, 494 P.2d 1039 (1972); *Buckle v. Caylor,* 10 Kan. App. 2d 443, 444, 700 P.2d 979 (1985).

Accordingly, the lease provision here requiring 90 days' written notice for renewal served only to secure the leasehold for an additional 3 years, whereas holding over with permission would secure the leasehold for at least an additional year *upon the same terms and conditions* as a matter of law. Whether by renewal after written notice or by holding over with consent of the landlord, the tenant is entitled to *all the terms and conditions of the original lease*, including further renewal options and the purchase option. So long as the tenant exercises a purchase option under the lease within the term of a valid holdover tenancy, the right is fully enforceable as a matter of law.

I would affirm the district court on this legal basis. See *Bergstrom v. Noah*, 266 Kan. 847, 875-76, 974 P.2d 531 (1999).