NOT DESIGNATED FOR PUBLICATION

No. 114,642

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DIANE HANSHEW d/b/a H & G PROPERTIES,
*Appellant*,

v.

NATHAN W. WATKINS and SHERRY WATKINS,
d/b/a BLUESTEM VENDING SERVICE,
*Appellees*.

MEMORANDUM OPINION

Appeal from Lyon District Court; DOUGLAS P. JONES, judge. Opinion filed April 29, 2016.
Reversed and remanded.

*Thomas A. Krueger*, of Krueger Law Offices, of Emporia, for appellant.

*Monte L. Miller*, of Miller & Miller, Chtd., of Emporia, for appellees.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*:  The plaintiff-landlord, Diane Hanshew d/b/a H&G Properties, appeals from the trial court's adverse decision after a bench trial. The lease refers to the landlord as HAG Properties, but all the pleadings and other papers on file refer to the plaintiff as H&G rather than HAG. Accordingly, we will refer to the plaintiff-landlord as H&G.

The trial court determined that H&G's claim against its tenants, who did business as Bluestem Vending Service (Bluestem), was barred by K.S.A. 60-512(1), the 3-year statute of limitations for contracts not in writing.

1

*Facts*

The dispute centers on a commercial building in Emporia which H&G originally leased to Bird Distributors, Inc. on May 11, 1982. The written lease was for an initial 3-year term from June 15, 1982, to June 14, 1985, with a 1-year renewal option.

Bird exercised the renewal option. At the end of the renewal term Bird held over without a new written lease for an extended time but with H&G's consent. Then, on January 23, 1997, again with H&G's consent, Bird assigned its rights under the lease to Bluestem "under the same terms and conditions as presently in force."

H&G and Bluestem agreed to an initial extension of the lease and then extended the lease a second time by a written agreement for a 1-year term beginning June 15, 1998, and ending June 14, 1999. This extension agreement incorporated the terms of the 1982 lease but increased the rent to $1,000 per month with the rent due on the 15th of each month.

With H&G's apparent consent, Bluestem held over at the expiration of this last written lease extension for a period of 10 years.

Then, on July 7, 2009, Bluestem gave H&G written notice that it intended to vacate the building on August 7, 2009. For whatever reason, Bluestem did not vacate the premises in August but continued in possession. According to the rent record included in trial exhibit 5, Bluestem first breached its obligation to pay rent when it failed to make the August 15, 2009, rent payment. Bluestem seems to concede this point when it states in its counterclaim that "[a]ll rents had been timely paid up until August 15, 2009."

Bluestem did not vacate the premises until December 16, 2009. It was 3 years later, in December 2012, when H&G finally submitted its final accounting to Bluestem

2

showing the amounts H&G claimed in back rent and repair costs. In that final accounting, H&G contended that the monthly rent due was $1,080.

*The Suit*

The parties were unable to reach an agreement on what was owed. The dispute involved issues regarding the maintenance of and damage to the property and whether and to what extent Bluestem's personal property was damaged while being stored on the premises. There was no dispute about the monthly rent rate of $1,080.

H&G brought this action on October 22, 2013. Bluestem answered and counterclaimed for personal property stored on the premises, which it claimed was damaged due to H&G's failure to make roof repairs as required by the lease. After several rounds of pleadings, Bluestem eventually raised the defense that H&G's claim was barred by the 3-year statute of limitations, K.S.A. 60-512(1).

The trial court found that Bluestem's counterclaim was barred by K.S.A. 60-512(1), the 3-year statute of limitations, and Bluestem has not appealed that ruling.

H&G's claims were tried to the court. The court determined that the latest writing which memorialized the lease of the property was the lease extension that expired in June 1999. The court concluded that Bluestem's holding over thereafter created a month-to-month tenancy, apparently based on K.S.A. 58-2503. According to the court, this month-to-month tenancy ended on March 15, 2010, and H&G had 3 years thereafter to commence this action. Having failed to do so, H&G's claim was barred by K.S.A. 60-512(1), the 3-year statute of limitations that applied to contracts not in writing.

H&G's motion for reconsideration was unsuccessful, and this appeal followed. The sole issue on appeal is whether the district court erred in applying the 3-year statute of

3

limitations to H&G's claim. The interpretation and application of a statute of limitations is a question of law over which we have unlimited review. *Smith v. Graham*, 282 Kan. 651, 655, 147 P.3d 859 (2006).

*K.S.A. 84-2a-506(1)*

H&G first argues that K.S.A. 84-2a-506(1) is the applicable statute of limitations. This provision is part of the Uniform Commercial Code and provides for a 4-year limitation period.

It is true that under this provision of the Uniform Commercial Code an action for breach of a lease contract is subject to a 4-year limitation period. But the Code defines a "lease" as "a transfer of the right to possession and use of *goods* for a term in return for consideration." (Emphasis added.) K.S.A. 2015 Supp. 84-2a-103(j). It further defines "goods" as "all things that are movable at the time of identification to the lease contract, or are fixtures," *i.e.*, not real property. K.S.A. 2015 Supp. 84-2a-103(h).

K.S.A. 84-2a-506(1), which applies to personal property rather than real property, clearly does not apply to an action for rent due under a lease of real property.

*K.S.A. 60-511(1)*

Alternatively, H&G contends that K.S.A. 60-511(1) is the applicable 5-year statute of limitations because the parties' agreement was in writing. H&G asserts: "The promise to pay rent, the amount of rent, the acknowledgement that rent was owed at the time of vacating the premises and the memo signed by the parties that all the terms and conditions of the original lease agreement shall continue in force, were all in writing."

4

It is true that the lease extension agreement incorporated by reference all the terms of the original lease, except for the amount of rent and the rent due date. "When a writing is incorporated by reference, it becomes part of the contract" to the extent that it effectuates the purpose of the contract. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 650, 298 P.3d 358, *rev. denied* 297 Kan. 1246 (2013). Here, the lease extension and the incorporated original lease become, for our purposes, one written contract.

K.S.A. 60-511(1) provides a 5-year statute of limitations for "[a]n action upon any agreement, contract or promise in writing." For the 5-year statute of limitations to apply, there must be a writing that contains all the material terms of the contract. *Chilson v. Capital Bank of Miami*, 237 Kan. 442, 446, 701 P.2d 903 (1985). The writing "must be full and complete in itself so as not to require proof of extrinsic facts to establish all essential contractual terms." 237 Kan. at 446. A contract is, in legal effect, an oral contract for the purposes of applying the statute of limitations if it is partly in writing and partly oral. 237 Kan. at 446.

The written lease extension agreement between H&G and Bluestem incorporated all of the terms and conditions contained in the original written lease agreement. Between these two documents, the lease agreement identified the parties to the agreement; the leased property; the duration of the lease; the various terms of the lease regarding the amount and due date for rent; and the various other obligations of the parties, including the obligation to maintain the premises. The only hitch is with respect to the amount of monthly rent due. The amount of monthly rent now claimed by H&G is not the amount stated in the original lease agreement. The lease extension after the term that ended on June 14, 1999, provided for rent of $1,000 per month. But H&G now claims rent of $1,080 per month. The question is whether there is a writing attributable to Bluestem that confirms this rent obligation of $1,080 per month so as to satisfy the requirement of a writing in order for the 5-year statute of limitations to apply.

5

At trial, H&G calculated its lost rent at $1,080 per month. Its final accounting states: "Monthly rental rate: $1,080.00." In its counterclaim, denominated a "Counter Petition," Bluestem asserted that on January 5, 2010, it notified H&G that it had moved out of the premises and included with the notice a check for 2 months' additional rent. In its letter of February 4, 2013, H&G acknowledged this payment, without stating the amount. Bluestem further asserted in its counterclaim that it "withheld and offset the November and December, 2009, rent payments for a total of $2,160.00." Thus, in its written counterclaim filed with the court, Bluestem asserted that the monthly rent rate was $1,080 at the time of breach. In its suggested findings of fact and conclusion of law following the bench trial, H&G proposed as a finding: "The total amount of rent due would be 7 months at $1,080 per month or $7,560.00, less 2 months paid rent of $2,160, for a net of $5,400 due and payable. The amount of the rent is undisputed."

In order to satisfy the requirement of a writing for the 5-year statute of limitations to apply, all the terms must be contained in a writing so that there need be no recourse to external evidence or oral testimony to establish an essential term. The amount of rent is an essential term. So does the written assertion in Bluestem's counterclaim that it paid 2 months' rent at $1,080 per month satisfy the writing requirement of the statute? Or is external evidence or oral testimony required to prove that the monthly rent due at the time of breach was $1,080 and not $1,000 per month?

To answer these questions we must consider whether Bluestem's statement of the monthly rent rate in its counterclaim constituted judicial admission that relieves H&G from having to present oral testimony or external evidence to establish the monthly rent rate.

In *Lytle v. Stearns*, 250 Kan. 783, 798-99, 830 P.2d 1197 (1992), the court found no judicial admission when a plaintiff in a wrongful death action joined additional defendants and alleged that they were at fault after the principal defendant in his answer

6

asserted the comparative fault of others. The principal defendant sought to use this claim from the plaintiff's amended petition as a judicial admission. Quoting McCormick on Evidence § 265, 781-82, the Supreme Court found otherwise, stating that such "'alternative and hypothetical forms of statement of claims and defenses, regardless of consistency. . . lack the essential character of an admission.'" 250 Kan. at 798-99. But that is not the case here. Bluestem's clear statement of the monthly rent rate in its counterclaim was not a hypothetical alternative but a clear admission of the monthly rent due.

Am. Jur. defines a judicial admission as follows: "A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case. It is a voluntary concession of fact by a party or a party's attorney during judicial proceedings." 29A Am. Jur. 2d, Evidence § 783.

A judicial admission is a substitute for evidence at trial. *Anonymous v. Vasconcellos*, 15 Neb. App. 363, 727 N.W.2d 708 (2007). A judicial admission dispenses with the need to produce evidence on the admitted fact. *Francis v. Richardson*, 978 S.W.2d 70 (Mo. App. 1998); see *Fletcher v. Eagle River Memorial Hosp., Inc.*, 156 Wisc. 2d 165, 456 N.W.2d 788 (1990).

Here, Bluestem's admission in its counterclaim that the rent due H&G at the time of the breach was $1,080 per month constituted a writing which, taken together with the original lease and the lease renewal, sets forth all the essential terms involving Bluestem's lease of the property. It obviates the need for any oral testimony or external evidence on the amount of monthly rent due which otherwise would have taken H&G's claim outside of the 5-year statute of limitations applicable to claims based upon a written contract. Thus, we conclude that K.S.A. 60-511(1), the 5-year statute of limitations, applies to H&G's claim.

7

Bluestem's final lease extension agreement extended the lease term from June 15, 1998, to June 14, 1999. The trial court found that when Bluestem held over at the end of the lease with H&G's consent, Bluestem became a month-to-month tenant under K.S.A. 58-2503. But the tenancy upon which Bluestem held over was a tenancy from year-to-year. K.S.A. 58-2502 states: "When premises are let for one or more years, and the tenant with the assent of the landlord continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant from year to year." This statute, which has often been applied to farm leases [see *Buckle v. Caylor*, 10 Kan. App. 2d 443, 444, 700 P.2d 979 (1985)], has applied equally for well over a century to the lease of commercial premises as well. See *Adams Express Co. v. McDonald*, 21 Kan. 680 (1879). Under this arrangement, Bluestem continued its year-to-year tenancy as a holdover tenant under the terms and conditions of its original tenancy. See *Becker v. McFadden*, 221 Kan. 552, 555, 561 P.2d 416 (1977). Thus, the final annual lease term was for the period June 15, 2009, to June 14, 2010.

A breach of contract claim "accrues when the contract is breached." *Nelson v. Nelson*, 38 Kan. App. 2d 64, 83, 162 P.3d 43 (2007), *aff'd* 288 Kan. 570, 205 P.3d 715 (2009). It appears that the contract was breached when Bluestem failed to pay rent as due on August 15, 2009, 2 months into the final term. In its ruling, the trial court considered the agreement to have been breached much later on March 15, 2010. But regardless of which date is used, when H&G commenced this action on October 22, 2013, it was within the 5-year limitation period of K.S.A. 60-511(1).

Thus, we conclude that the trial court erred in finding that H&G's claim was barred by K.S.A. 60-512(1), the 3-year statute of limitations.

Reversed and remanded.

8